1. The evidence failed to show any custom on the part of the insurer to accept premium payments after the time they were due under the policy that would constitute a waiver of the provision of the contract which caused the policy to lapse because of non-payment of premiums within the time specified in the policy. *Page 44 
2. The agent to whom the premiums were paid was not one coming within the description of those designated by the provision of the policy as authorized to modify or reinstate the policy if lapsed, or to extend the time of payment of a premium, and the policy expressly provided that "no agent has power on behalf of the company to waive any forfeiture or to bind the company by making any promise, or by making or receiving any representations or information."
3. Under the law and the evidence the verdict in favor of the plaintiff was not authorized, and the court erred in overruling the defendant's motion for new trial.
 DECIDED JULY 16, 1940.
Lonnie Yearta brought suit against the Gulf Life Insurance Company, to recover on a policy of insurance issued by the defendant on the life of Lottie Louise Yearta, the wife of the plaintiff, in which he was named beneficiary. He alleged, that his wife died on May 4, 1938; that at that time the policy was in force and effect, with all premiums paid; that he made written demand of the defendant for payment of the policy, and on May 9, 1938, the defendant denied liability and refused payment; and that immediately after the death of his wife he demanded of the defendant blanks on which to file "proof of loss," and defendant refused to furnish blanks. The defendant denied liability, and further alleged, that the policy was not in force at the time the plaintiff's wife died, for that it had become lapsed for non-payment of premiums, the date of the last payment of premium being March 21, 1938; that under the terms of the policy it became lapsed at noon on April 25, 1938; that the policy provided that "a grace period of four weeks will be granted for payment of every premium after the first, during which time the insurance will continue in force;" that on April 29, 1938, around 8 p. m., after the policy had lapsed, and while the plaintiff's wife was confined in the hospital, she deposited with one of the defendant's agents sixty cents to be applied as part payment of the past-due premiums in case the policy should be reinstated; that the policy was never reinstated, for that it provided that "the acceptance of any overdue premiums will not create any obligation on the part of the company to receive premiums which are over four weeks in arrears," and further provided that "should this policy become void in consequence of non-payment of premiums, it may be revived upon payment of all premiums in arrears and the *Page 45 
presentation of evidence of insurability satisfactory to the company;" that after the policy had lapsed all the premiums in arrears were not paid, nor was any evidence of the insurability of the plaintiff's wife furnished to the defendant, and she was unable to furnish any such evidence at the time the sixty cents was paid, for the reason that she was confined in the hospital in a serious condition; that the policy further provided that "no person except the president, secretary, or assistant secretary has the power to modify or in the event of lapse, reinstate this policy, or to extend the time of payment of a premium," and "no agent has power on behalf of the company to waive any forfeiture or to bind the company by making any promise, or by making or receiving any representations or information;" that when the sixty cents was paid to the defendant's agent the following receipt was issued, subject to all terms of the policy and contingent upon all applicants being in sound health: "If the applicants are accepted and the policies issued and delivered to the insured, this deposit will be applied toward payment of premiums therein. If application is rejected, the said deposit will be returned." It was alleged that the plaintiff's wife died before the application for reinstatement was submitted to the home office of the defendant, and without the policy having been reinstated, and that it has tendered to the plaintiff the sum of sixty cents and "now tenders and continues to tender" such sum, and "pays said sum into the coffers of this court in order that same may be available at any time plaintiff desires to accept said sum."
The policy sued on was introduced in evidence. It contained the provisions in the defendant's answer quoted above. It was issued on February 22, 1937, and thereby the defendant company insured the life of Lottie Louise Yearta for $500 at a weekly premium of thirty cents.
Lonnie Yearta, the plaintiff, testified, in part, as follows: His wife, the insured, died on May 4, 1938, after having been sick seven or eight days. "On February 22, 1937, she took out a life-insurance policy on her life with the Gulf Life Insurance Company. . . This is the premium-receipt book that I kept in my possession during the time I made payments on these premiums. It was about five weeks after the policy was issued before I paid the first premium. I paid two or three more premiums that were more than four weeks past due. I don't remember the date exactly when *Page 46 
I paid them. He [the agent] would date them back. . . He would go back to the date they were due, and mark my book up as if they were paid on the due date. . . That is the reason I can not find it on the book, because he would date it back. She [his wife] went to the hospital on Saturday before she died on Wednesday. On Friday morning before my wife went to the hospital on Saturday the collector of the Gulf Life came to collect on the policy. As to who he was — Mr. Parr. As to what I did about the payment of the premium after the agent came out there on Friday, I paid that Friday at the office, at the branch office in LaGrange. It was paid about five o'clock in the afternoon. . . This is the receipt the man at the office gave me at that time. . . I paid sixty cents — that is the correct amount shown on the receipt. When I paid that I told them I was paying it on Louise Yearta's policy. . . The man in the office did not refuse to take the money. He took the money and gave me a receipt for it. That money has not been offered to me since that time. They have never said anything to me about taking the money back and they still have the money. . . This is my receipt book — kept in my possession all the time. The company furnished me that book as my record of the payments that were made on the policy. . . The payments that I made to the company were all put in this book except that receipt for sixty cents. . . As to my contending that the book is wrong, it is marked wrong."
John Darden testified for the defendant, in part, as follows: "In January or February, 1937, I was connected with the Gulf Life Insurance Company as agent. I was present at the time the application was taken for the policy on the life of Mrs. Yearta. . . There was a payment [of sixty cents] made at the time the application was taken. . . As to how long it was after the application was made before the policy was issued, it was approximately some ten days to a week, depending on the day of the week the policy was taken. I had charge of that debit for a few months after the policy was delivered — February, 1937, until the latter part of December of that year. The first payment that was made on this policy of insurance was in the sum of sixty cents, and was made at the time the application was taken. . . As to how the credit is made on the book in the event the application is accepted, the policy goes into benefit at the time it is delivered, and in non-insurance *Page 47 
terms it is using that premium. I delivered the policy. At the time I delivered the policy I gave him credit for the sixty cents he had previously paid. I entered it up as thirty cents for two weeks. The premiums on that policy was thirty cents a week. The first entry that was made is of the date that the policy was delivered or went into benefit. The sixty cents was entered on the book at the time I delivered the policy — both weeks. As to one being for the week of the 22d, and the other for the next week following, I entered both, showing that sixty cents was paid on the 22d. . . I made those entries in there myself, and they are made correctly. I never did receive payments from him and date those payments back. . . As to there being a five-weeks lapse between the time he made the application for the policy and the first payment was made, so far as I can remember, there was not, and the record is here as he made the payments. . . From February up through November, 1937, all of those entries were made in my handwriting. . . As to whether at any time during the whole period of time did his policy lapse or get as much as four weeks behind, no, sir. I will amend that and go over this record, and I can tell you exactly. [Looks over premium-receipt book]. No, sir, it was never out of benefit at any time. . . The premium or credit was not entered in the book until the policy came and was delivered to Mr. Yearta on the 22d, the date of the issue of the policy. The policy was delivered to him on the 22d. The policy was not issued until about ten to twelve days after the application was taken. He paid the premium with the application, and the receipt was issued for the amount. We can't enter any permanent record until the policy is issued."
Olin Parr testified for the defendant, in part, as follows: "I once had a connection with the Gulf Life Insurance Company. I began the 11th day of March, 1938. I was on the debit or route or territory that Mr. Yearta was in. After examining this premium-receipt book, I recognize the entries therein made by me. The first entry made in my handwriting is March 18, 1938. . . I made those entries correctly and truthfully, and did not date them back. . . I did not accept the money on a subsequent date and put down a prior date. . . I called on Mr. Yearta to make payments which he failed and refused to make. According to my record he got in arrears. I remember calling on him just *Page 48 
prior to the time that his four-weeks grace period expired on or about the 23d of April, 1938, the 22d or 23d. I went to see him about the 23d. That was on Saturday, a short time before his wife died, probably a week or ten days. In a conversation with me he stated he could not carry the policy any further, on account of financial conditions. As to my advising him with reference to whether the policy would be lapsed if he could not pay it, I don't recall that, but I am sure that he said he could not carry it any further. . . He said he did not want it any more. . . I did not go back to the office after that and ascertain how many more days of grace there were. . . I went back, and we lapsed the policy. That was after the conversation with Mr. Yearta on the same day. As to whether the policy was four weeks in arrears at the time it was lapsed, it was five. I did not go to Mr. Yearta's house on the 29th of April, a week after I lapsed the policy. I did not go there, and did not see his wife for the purpose of collecting insurance or for any other purpose, on the 29th. I did not go back until after the death of his wife. As to why I went there, there was a payment brought in the office, and Mr. Fulton, my manager, instructed me to go and collect the balance of arrears, which amounted to $1.20, which was four weeks; and he also furnished me with a revival application. I carried the revival application out there. . . I saw Mr. Yearta." The witness then testified that when he took the application to Mr. Yearta and told him he must see Mrs. Yearta in order to ascertain her health, he was informed that Mrs. Yearta was dead. "As to when I was out there, it was the day she was a corpse. . . It was a week or ten days after the 23d. It was Wednesday, but I did not know the date. I do know at that very time this policy had been lapsed. I showed it to Mr. Yearta on the book. As to my knowing in the meantime that the company had accepted sixty cents on the policy, yes, sir. As to my knowing they still have the sixty cents, I do not know. I didn't give it back to him. I did not offer it to him. I stated that when I was talking to Mr. Yearta on the 23d the policy was then five weeks in arrears, and I was after him to pay the premium on that date. The policy was in arrears for four weeks, and five weeks had lapsed at the time I talked with him. I was trying to get him to pay the premium at that time to keep the policy from lapsing. At that time I did not put it on the lapsed sheet." The *Page 49 
following receipt, dated April 29, 1938, was introduced: "Received from Lottie Louise Yearta sixty cents. . . This deposit is made and this receipt issued subject to all the terms of the policy and contingent upon all applicants being in sound health. If applicants are accepted and policies issued and delivered to the insured, this deposit will be applied towards payment of premiums thereon. If application is rejected, the said deposit will be returned. B. L. Cook, agent."
The jury returned a verdict in favor of the plaintiff for the principal amount of the policy, with interest and $100 attorney's fees. The defendant moved for a new trial on the general grounds, and on special grounds which were amplifications of the general grounds, with an assignment of error on the charge of the court relative to damages and attorney's fees. Upon the plaintiff's writing off from the verdict the recovery of attorney's fees, the judge overruled the motion, and the defendant excepted.
Treating the evidence as in conflict as to some of the payments of premiums having been accepted by the company's agent several weeks after their due date, still the testimony for the plaintiff was not such as to show a custom on the part of the company in receiving payments for premiums after they were due and in not insisting on the premiums being paid in accordance with the policy contract. Taking the evidence most favorably to the plaintiff as to such alleged custom, it is shown by his testimony only that it was five weeks after the issuance of the policy that the first premium was paid, and that he paid "two or three" weekly premiums of thirty cents that were more than four weeks past due. The plaintiff could not remember when these belated premiums were paid, because, as he testified, the agent entered them on his premium book as of the due date. So far as the evidence discloses, these premiums may have been paid in the early life of the policy, which was in effect for more than a year, after which time the terms of the policy were fully complied with until a short while before the death of the insured. Thus even the testimony of the plaintiff shows no such custom as reasonably could be said to have induced the plaintiff to believe that payments of premiums four or five weeks after the due date would keep the policy in *Page 50 
force; and furthermore, it is not made to appear that the insurance company had any knowledge that the premiums paid had not all been paid when due. The agent to whom the premiums were paid was not one coming within the description of those designated by the provision of the policy as authorized to modify or reinstate the policy if lapsed, or to extend the time of payment of a premium; and the policy expressly provided that "no agent has power on behalf of the company to waive any forfeiture or to bind the company by making any promise, or by making or receiving any representations or information." Before the insurance company would be bound, it would be necessary to show that it knew that the premiums had been accepted after the due date, or by some act had ratified the acceptance of belated payments of premiums. Under the authority ofSovereign Camp Woodmen c. v. Hart, 187 Ga. 304 (200 S.E. 296), a finding was not authorized that the defendant had waived the condition of the policy which caused it to lapse because of non-payment of premiums within the time specified, and the plaintiff was not entitled to recover. Accordingly, the court erred in overruling the motion for new trial.
Judgment reversed. Sutton and Felton, JJ., concur. Stephens, P. J.,dissents.