29220.   NATIONAL LIFE AND ACCIDENT INSURANCE
COMPANY *v.* PARKER.

DECIDED MARCH 17, 1942.

4

6

*Hammond, Kennedy & Yow,* for plaintiff in error.

*Freeman C. McClure, W. D. Lanier, Clarence L. Powell,* contra.

Sutton, J. ■ The petition alleged: "The plaintiff is uneducated and can read and understand writing only with difficulty when in a normal condition, and if she signed any receipt on the back of the check or otherwise she knows nothing about it, and knew nothing about it at the time, if she did, and if she signed a

release or receipt in full of all claims under the policy it did not constitute any settlement or satisfaction of such claims because of lack of consideration, since she received only what the defendant conceded to be due to her under the policy, and it in no wise affected claims for other amounts in favor of the plaintiff under the policy." One special ground of demurrer, numbered 5, attacks these allegations and moves to strike them for the reason that the conclusions set forth are incorrect as a matter of law. The con-. clusions objected to, namely, as to the plaintiff not being barred from other claims under the policy by reason of any receipt for the paid-up value of the policy, would not, as a matter of law, be correct, because if the plaintiff, under a claim for double indemnity under the policy, which the defendant disputed, actually accepted the sum of $44 and executed a paper releasing the defendant, in consideration of such payment, from liability for any other claim under the policy, she would be bound thereby as for an accord and satisfaction. *Burgamy* v. *Holton,* 165 *Ga.* 384 (141 S. E. 42); *Riley* v. *London Guaranty & Accident Co.,* 27 *Ga. App.* 686 (109 S. E. 676); *Pan-American Life Insurance Co.* v. *Carter,* 57 *Ga. App.* 294 (195 S. E. 326); *King* v. *Liberty National Life Insurance Co.,* 59 *Ga. App.* 496 (1 S. E. 2d, 223). *Pan-American Life Insurance Co.* v. *Bagley,* 55 *Ga. App.* 610 (191 S. E. 144), cited and particularly relied upon by the defendant in error is distinguishable on its facts from the present case. There the policy provided for payment of $2000 in case of death and for an additional payment of $2000 in case of accidental death. The amount of $2000 paid to the plaintiff beneficiary was due her whether or not she was entitled to the additional sum. In the present case the sum of $44 as the paid-up value of the policy was not due the plaintiff in the event she was entitled to payment as for accidental death of the insured. Other cases cited by the defendant in error are equally distinguishable. While it is alleged here that the agent perpetrated a fraud upon the plaintiff in stating that the policy had been lapsed for one week, such conduct does not amount to actionable fraud inasmuch as the fact of lapse or non-lapse was readily ascertainable by the plaintiff, and no fiduciary relationship existed between her and the agent. *Howard* v. *Georgia Home Insurance Co.,* 102 *Ga.* 137 (29 S. E. 143); *Miller* v. *Roberts,* 9 *Ga. App.* 511 (2), 512 (71 S. E. 927); *Bankers Health & Life Insur-*

*ance Co.* v. *Givens,* 43 *Ga. App.* 43 (4), 50 (157 S. E. 906). Likewise, whether she was entitled to receive the amount of double indemnity or only the paid-up value of the policy involved a question of law, and the agent's declared opinion in that respect would not constitute actionable fraud. *Beckmann* v. *Atlantic Refining Co.,* 53 *Ga. App.* 671 (2) (187 S. E. 158). It is not shown that the agent perpetrated upon the plaintiff any artifice or trick to prevent her from knowing the contents of the paper she signed. She alleges that if she signed any release she did not know it and that she "can read and understand writing only with difficulty when in a normal condition," but she does not allege that, though with difficulty, she could not have read any paper she might have signed and have understood the same. The trial court erred in not striking the aforesaid allegations.

The petition alleged: "The defendant had on numerous occasions accepted premiums on the policy when they were more than four weeks in arrears and without written application for revival of the policy. The conduct of the defendant through its agents in accepting past-due premiums and maintaining the policy in force when by its terms it might have been terminated, because premiums were more than four weeks in arrears, waived the right to declare a forfeiture of the policy and it is now estopped from claiming the right of forfeiture. The said custom and course of dealings of the defendant with the plaintiff, in receiving without objection premiums more than four weeks past due when the defendant could have insisted upon a forfeiture of the policy, induced the belief on the part of the plaintiff that premiums would be received by the defendant within a reasonable time after the maturity. The premium receipt books of the plaintiff, in regard to payments on the policy, show due dates of premiums and dates of payments." (Then follows a list of due dates of certain premiums and the dates on which they were paid, being 18 in all, and which payments were made more than four weeks after the respective due dates, together with allegations of the initials and names of the agents of the defendant who collected the premiums.) The defendant specially demurred to the allegations on the ground that it appeared that the alleged custom, if any ever existed, had been abandoned. This objection is well taken. The list of due dates of premiums and dates of payment as pleaded in detail shows that the last date when

a premium more than four weeks in arrears was accepted by an agent was May 22, 1939, and thus the alleged custom had been abandoned nearly a year before the death of the insured. After that time the plaintiff had no right to assume that any more payments of premiums more than four weeks in arrears would be accepted. The subsequent payments in the time required by the policy overcame any alleged custom and course of dealings. *Davenport* v. *Metropolitan Life Insurance Co.*, 55 *Ga. App.* 553 (190 S. E. 872); *Gulf Life Insurance Co.* v. *Yearta*, 63 *Ga. App.* 43, 49 (10 S. E. 2d, 120). The trial court erred in not striking, in response to the special demurrer, the aforesaid allegations. Other special grounds of the defendant's demurrer have been carefully examined, but are without merit and no discussion is deemed profitable.

■ Stripped of the allegations above dealt with, the petition nevertheless sets forth a cause of action. It shows that the plaintiff was the beneficiary under a policy of insurance on the life of her son, Earl Forest Parker, which also provided for double indemnity in case of bodily injury, solely through external, violent, and accidental means, resulting in the death of the insured within ninety days from the date of such bodily injury while the policy was in force, and that the insured died on April 1, 1940, from accidental drowning, such death resulting from bodily injury by the aforesaid means. The plaintiff alleges that she "paid all the premiums and was the beneficiary in the policy on April 1, 1940." Later in the petition allegations are made which suggest that all premiums might not have been paid at the time of the death of the insured, and there is an intimation, though not precisely shown, that the policy provided for a lapse in case payment of a premium should not be made before it became four weeks in arrears. The petition, apparently in anticipation that some defense claiming a lapse would be filed, proceeds to set forth allegations of certain payments and facts to overcome such a possible defense. However, a copy of the policy is not attached to the petition, and its absence is explained by the fact that the defendant has possession of it and has failed to deliver it to the plaintiff on demand. It not being shown that the contract provided for a lapse for non-payment of a premium, this court can not say that there is any such provision, and it necessarily follows that no lapse would result because of the

mere failure to pay a premium. The payment of a premium is a condition subsequent unless by contract made a condition precedent. *Lankford* v. *State Life Insurance Co., 57 Ga. App.* 626, 634 (195 S. E. 907); *National Life & Accident Insurance Co.* v. *Lockett, 65 Ga. App.* 866 (16 S. E. 2d, 776). Where a forfeiture provision is contained in a policy of insurance it is the general rule that "The punctual payment of insurance premiums, as and when due, is of the essence of the contract of insurance, and a failure to make such payment in strict compliance with the terms of the contract, in the absence of a waiver expressly made, or arising by reasonable implication, results in a forfeiture of the policy." *Plumer* v. *Continental Casualty Co., 12 Ga. App.* 594 (77 S. E. 917); *Illinois Life Insurance Co.* v. *McKay, 6 Ga. App.* 285, 289 (64 S. E. 1131); *Metropolitan Life Insurance Co.* v. *Smith, 48 Ga. App.* 245 (172 S. E. 654). However, as hereinbefore stated, the present petition does not show any such contractual provision. It is alleged that the plaintiff demanded of the defendant the payment of the double indemnity, $640, less the amount of $44 received by her and later tendered back to the defendant and refused, and less 60 cents representing six premiums which the defendant claimed to be in arrears, and that payment was refused by the defendant, and judgment is prayed for $595.40, as well as for damages and attorney's fees for reasons stated. The petition set forth a cause of action, and the trial court did not err in overruling the defendant's general demurrer.

■ The policy sued on, which was introduced in evidence, was issued on the life of Earl F. Parker in consideration of weekly payments, on Mondays, of ten cents, and Mae E. Parker, the plaintiff here, was named beneficiary. It provided for the payment of $320 in the event of the death of the insured and for double indemnity, as set out in the petition, in case of death from bodily injury, solely through external, violent, and accidental means, etc. The policy also provided:

"This policy contains the entire agreement between the company and the insured and the holder and owner thereof. Its terms can not be changed or its conditions varied except by a written agreement, signed by the president or secretary of the company. No other person shall have the power to make or alter contracts, waive forfeitures, or receive premiums on policies in arrears more

than four weeks, or to receipt for the same, and all such arrears given to an agent or employee shall not be credited upon the policy, whether receipted for or not, except as provided in paragraph titled 'Revival.'

"A grace period of four weeks shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the days of grace, the overdue premiums shall be deducted from the amount payable hereunder, but neither this concession nor the acceptance of any overdue premiums shall create an obligation on the part of the company to receive premiums which are in arrears over four weeks.

"After premiums on this policy have been fully paid for three years or more, then in the event of default of any subsequent premium this policy will automatically and immediately on such default be commuted to unconditional, nonforfeitable paid-up life insurance, upon which no further premiums will be required, and which shall be of the amount shown in the following table, but any indebtedness to the company hereon, if not repaid, will reduce the amount of insurance in such proportion as the indebtedness bears to the amount of surrender value used as a single premium in calculating the values appearing in the table. [The schedule above referred to showed that the amount of paid-up insurance at the time the policy was alleged by the company to have lapsed was $44.]

"After this policy shall be in force, during the lifetime of the insured, for two full years from the date hereof, it shall be incontestable, except for non-payment of premiums, but if the age of the insured be misstated, the premium payable hereunder shall be such as the premium paid would have purchased at the correct age." (This provision of the policy was inadvertently omitted from the brief of evidence by the reporter, but counsel for the plaintiff in error, in a written acknowledgment of service of a copy of the brief of the defendant in error, have agreed that it was a part of the policy introduced in evidence and is properly to be considered as a part of the record.)

It was stipulated between the parties as follows: "(1) It is stipulated and agreed that Earl Forest Parker died on April 1, 1940, from drowning which was an accidental death within the meaning of the policy providing for double indemnity in case of

accidental death, and that if plaintiff is entitled to recover she would be entitled to the double indemnity for accidental death. (2) That on the date of the death of the said insured, namely, on April 1, 1940, the premium on the policy sued on in this case was five weeks in arrears, and that the said policy lapsed according to its terms at midnight on March 25, 1940. (3) It is agreed and understood that this stipulation is to be filed as a part of the record in this case, and shall be treated as evidence for either party to this cause without the proof of the facts and things referred to in said stipulation."

The defendant introduced in evidence a receipt and release signed by the plaintiff beneficiary as follows: "Received of The National Life & Accident Insurance Co. Inc. of Nashville, Tennessee, through W. E. Jakes, manager, superintendent, at Augusta, Ga., forty-four and 0/100 dollars in full settlement, discharge, and satisfaction of all claims or demands of every nature against said company under or arising out of its policy or contract of insurance No. L14281957 insuring Earl Forest Parker and payable to me. This payment is made to me by said company upon my expressed representation to it that I am fully authorized to collect same and release it from all liability under and by reason of the said policy or contract of insurance." The defendant also introduced in evidence a check dated at Augusta, Ga. April 9, 1940, payable to the order of Mrs. Ida Mae Parker, beneficiary, in the sum of $44, signed by the National Life & Accident Insurance Company, by Jane E. Mixon, cashier, and drawn on the Georgia Railroad Bank & Trust Company, Augusta, Ga., endorsed by the plaintiff and by V. A. McFeely and David Slusky & Son, in the order named, with stamping of bank showing that it had been paid in due course.

The plaintiff introduced in evidence four premium receipt books, beginning February 25, 1935, and running through September 25, 1939, showing the payment of the weekly premiums required by the policy sued on. The plaintiff contended and a witness for the plaintiff, familiar with such books, testified that they showed, on examination, that payments for a number of premiums had been accepted after they were more than four weeks in arrears, the last such payment being accepted on May 29, 1939. The last premium receipt book was not in evidence, the plaintiff testifying

that an agent of the company had misplaced it at her home or had taken it away. This the agent denied, and he testified that since he began collecting from the plaintiff on November 29, 1939, he had accepted no payment for a premium more than four weeks in arrears or after the grace period. The evidence showed conclusively that if any agent had at any time accepted payments proscribed by the company, under the written contract of insurance, no officer of the company authorized to waive such act had any knowledge of the fact. It was shown that the business of the company in the Augusta district was transacted under the direction and supervision of a local manager who alone communicated with the president, secretary, or other officer of the company; that all reports of the local and soliciting agents were submitted to him and that he forwarded to the company's home office certain reports as to its business in the Augusta district. Each collecting agent filed with the Augusta office a report of each policy on his debit each week, showing whether it was paid in advance, to date, or was in arrears and, if so, how many weeks. If the report showed a policy more than four weeks in arrears, it had to be accompanied by a lapse notice, and if thereafter money was collected on a policy reported for lapse it had to be accompanied by a "revival" application. For such money a conditional receipt was issued to the policy holder, and the revival of the policy was subject to the approval of the company at its home office. From the weekly reports filed by each agent a recapitulation was sent to the home office each week, showing total collections in dollars, arrears, etc., but it did not indicate to the company any particular policy in arrears. In the present instance the policy had never been reported by an agent as being more than four weeks in arrears until it lapsed on March 25, 1940, and if in fact an agent collected a belated premium and entered it on the premium receipt book of the insured, a duplicate of which book was kept in the Augusta office, as of the date it was supposed to be paid under the terms of the policy, neither the Augusta office nor the home office of the company would be aware that any premium had been collected after it was more than four weeks in arrears. Under the contractual provision of the policy hereinabove quoted the policy would continue in force only if premiums were paid within the grace period of four weeks after the due date, and no agent, without the

approval of the president or the secretary of the company in writing, had the authority to accept any premium after the period provided by the policy. Before the company would be bound by such an act of the agent it would be necessary for the plaintiff to show that the company knew that premiums had been accepted after the due date and expiration of the grace period or by some act had ratified the acceptance of belated premiums. *Gulf Life Insurance Co.* v. *Yearta,* supra; *Sovereign Camp Woodmen of the World* v. *Hart,* 187 *Ga.* 304 (200 S. E. 296). See also *Rome Industrial Insurance Co.* v. *Eidson,* 138 *Ga.* 592 (75 S. E. 657). Under the evidence and the stipulation of the parties the policy had lapsed before the death of the insured, under its plain terms, and nothing is shown to have constituted a waiver or estoppel against the company. In this view it is unnecessary to consider whether or not, under the release taken by the company from the plaintiff, the plaintiff was concluded as to her claim for double indemnity. It is shown that the company paid to her the paid-up value of the policy after the death of the insured, and this was all to which she was entitled.

The plaintiff concedes that she was concluded under the terms of the policy itself, but contends that there was evidence which would authorize the jury to find that the company had ratified certain collections by an agent after the premiums were more than four weeks in arrears. This evidence will now be dealt with. J. L. Sewell testified for the defendant that he worked with the company as superintendent under the manager at Augusta from June, 1939, to August, 1940, and had under his supervision the policy here involved. He had been put on the stand after W. E. Jakes, district manager at the Augusta office from April 26, 1926, to February 1, 1941, had testified as to the use of the premium receipt books, copies of which were kept in the Augusta office, and had explained that only a recapitulation of totals from the agents' reports were sent to the home office weekly, and that in such report no particular policy was reported on in detail, and that neither the president nor the secretary of the company saw the premium receipt books or the report made by the agent as to collections, arrears, etc. The witness testified: "These premium receipt books that the customer has, like those in evidence, represent the amounts and dates of payment on the policy. They correspond

with our records in the office." Then he was asked: "And you send them on to the home office?" He answered: "That is right." From this it is contended by the defendant in error that such testimony shows that a copy record of past-due premium payments was sent to the home office. The witness's answer, properly construed in the light of all the previous examination of witnesses, can not reasonably be said to commit himself to the proposition that the home office was acquainted with the details of the premium receipt books, but only that "our records," as expressed in the recapitulation sheet without any reference to any particular policy, and not the premium receipt books, were sent to the home office. But even if it could be said that the testimony was susceptible to the construction insisted upon by the defendant in error, the figures and dates in the premium receipt books covering payments made on the policy sued on would not show, as to premiums more than four weeks in arrears, any payment accepted after May 29, 1939. The death of the insured did not occur until April 1, 1940, and in the meantime any alleged custom of receiving premiums more than four weeks in arrears had been abandoned, and, therefore, the plaintiff had no right to expect that any more such belated payments would be accepted. Consequently, no waiver or estoppel could be urged against the company, because the subsequent payments on time overcame any previous custom or course of dealings. *Davenport* v. *Metropolitan Life Insurance Co.*, and *Gulf Life Insurance Co.* v. *Yearta*, supra.

It is further contended by the defendant in error that the evidence shows that she paid certain premiums on March 14, 1940, or March 15, 1940, and requested the agent to come back the following Saturday or Monday and she would pay the necessary premiums to prevent a lapse of the policy; that the money was left for him, but that she "did not see" anybody thereafter until April 3, 1940, and if the agent had come back and collected the money the policy would have been in force when the insured died on April 1, 1940; that the agent was accustomed to collect the premiums and she had a right to rely on his coming to the house, and under the authority of *Adams* v. *Washington Fidelity Insurance Co.*, 48 *Ga. App.* 753 (2) (173 S. E. 247), the company can not claim a forfeiture. J. F. Duke, the agent, testified: "The last payment, according to my records, was made under date of March 25th—March 18th.

. . I recall calling on her the Saturday before it lapsed on the 25th of March, 1940. I recall going there twice on Saturday, March 23, before it lapsed on Monday. I had a conversation with her about the importance of paying it to prevent it from lapsing on Monday. She told us to go ahead and lapse the policy, and that she was going to take it out with a friend of hers with another company, and told us she wasn't going to pay it any more and to go ahead and lapse it out. . . I went back twice on Monday to try and prevent it from lapsing, but she was not at home. I saw her daughter-in-law or somebody there, and there wasn't any money left there for me. I asked for money on the policy." W. E. Jakes, district manager of the Augusta office at that time, testified: "I would like to state also that the Monday which they speak about the policy was lapsed. I also called at her home [the plaintiff's] that day before we sent the policy away for cancellation, the 25th of March. I was not successful in getting the payment." J. L. Sewell, supervisor or superintendent under the manager, testified: "I went to see Mrs. Parker on March 23rd, two days before this policy lapsed. I saw Mrs. Parker on Saturday. I made two trips with Mr. Duke, and I told Mrs. Parker, as it was my job, when any policy under my supervision came up for lapse, in the interest of the agent and the interest of the policy holder to try and go save the policy. Mrs. Parker stated, and I believe she will remember it, that she had a very good friend that had started to work with another company, and she was going to write some policies with him to help him get started, and I furthermore went back on Monday morning. I asked for the money after Mr. Duke had been to the house. There wasn't any money there. When I went to the house I inquired for Mrs. Parker. She was not at home. The daughter-in-law knew who I was. She did not offer to pay any money on this policy. I asked for the money. No money was left there. I inquired and learned where she might be found. I learned that she was working at a hotel on the hill. I went there to look for her but could not find her." The plaintiff testified that before the death of the insured she was working at the Bon Air Hotel in Augusta. Inferentially, therefore, she was away from home when the agents called at her home. She stated in another part of her testimony that she was at home on Monday because "I had to be there because I was sick after the

boy got drowned." It is thus shown that she merely concludes that she was at home because of being sick after the insured drowned, but as he did not drown until April 1, 1940, her testimony could not properly relate to being sick on Monday, March 25, 1940, when two or more agents claim to have called at her home and found her absent. We think that the testimony of the plaintiff, properly construed, amounts only to a showing that she did not *see* any representative of the company at her home on Saturday, March 23, 1940, or on Monday, March 25, 1940. Of course, if she had shown that she was at all times where she could have absolutely seen any agent if he had called at her home on either date her testimony might raise an issue for the jury, but, as reported, we think it is only negative and does not amount to a contradiction of the positive testimony of the defendant's agents. It follows that the contention of the plaintiff is without merit. Inasmuch as a finding was demanded that the policy had lapsed before the death of the insured, and no waiver or estoppel is shown as against the company, the court erred in overruling the general grounds of the defendant's motion for new trial.

■ The court charged the jury: "She contends that, gentlemen of the jury, and both sides have agreed on the face of it that this policy was over four weeks due and in arrears, and, so far as the face of it is concerned, has lapsed." Ground 4 of the motion for new trial complains that the court erred, in that the instruction had the effect of qualifying the admission of the plaintiff by stipulation entered into that the policy had lapsed. The admission of the plaintiff was that the policy lapsed "according to its terms," but this could not reasonably be extended to mean that it had lapsed absolutely if it be proved that the company had knowingly permitted or ratified an agent's acceptance of premiums more than four weeks in arrears. The first word after "she contends," namely, "that," has reference to a contention of the plaintiff as given by the court immediately before the excerpt complained of: "The plaintiff contends, gentlemen of the jury, that, after this policy was issued, if the premiums as they came due were past due for over four weeks she contends that she knew that policy was lapsed." The court was merely informing the jury that as "contended" or admitted by the plaintiff the policy had lapsed according to its terms, and that both parties had agreed by a written

stipulation that "on the face of it," that is, according to its terms, the policy had lapsed. Nothing more in this respect was admitted by the plaintiff in the stipulation entered into, and the charge of the court was not error for the reason assigned.

The court charged the jury: "She contends, gentlemen of the jury, substantially, that she had no idea that accepting premiums after they were due and establishing thereby, as she contends, a course of dealing, would still keep the policy in life. She contends that is what was done. She contends there was a course of dealing between the company, through its agents, and her to accept premiums on that policy after they were past due and induced her to believe that in the future it would still be in life, and that she could keep it in life that way." Ground 5 of the motion for new trial complains of the charge on the ground that it was confusing. and misleading and was harmful to the defendant. The contention stated in the first two sentences is inconsistent with and contradictory to the contention stated in the last sentence. The plaintiff's contention was not as expressed by the court in the first two sentences, but was in accordance with the statement in the last sentence. The charge was error for the reason assigned.

The court charged the jury: "And if there was no such custom [accepting payments for premiums more than four weeks in arrears] shown by the evidence, then that would end the case. If you find that there was such a custom established between the company and the insured, and that within a reasonable time after they were payable she offered to pay them and did pay them, if you believe that, and that custom was established and that the president or secretary of the company knew it, then she could recover." Ground 6 of the motion for new trial complains that the last sentence was erroneous in that it submitted to the jury an issue not made by the evidence. This objection is well taken for the reason that the evidence showed that the alleged custom followed for .a time had been abandoned nearly a year before the death of the insured, and, furthermore, there was no evidence that the company waived or knew of any. payment of premium more than four weeks in arrears. The court erred in submitting such an issue to the jury.

The court, after charging the jury as to the contention of the defendant that it had paid the plaintiff the paid-up value of the

policy and had obtained a full release from the plaintiff, further charged: "If settlement is made with one party for an amount which the other party concedes to be due in any event, then a full settlement release is binding only as to the amount paid and conceded to be due, and does not have the effect of settling or releasing any other claim beyond what is conceded to be due." Ground ·7 of the motion for new trial assigns error on the ground that it was error to so charge, because not warranted by the evidence, the amount paid by the defendant not being conceded to be due the plaintiff in any event. This objection is well taken because the amount of $44 as the paid-up value of the policy was payable only in ·the event that the company was not liable to pay the plaintiff for the death of the insured and the defendant did not concede that the paid-up value of the policy was payable in any event.

The court charged the jury: "If you find that the plaintiff in this case signed or executed a full receipt and release to the defendant for the sum of $44, and that the sum of $44 was payable to the plaintiff as paid-up insurance, then such release and receipt would not have the effect of releasing the defendant from the payment of any other claims under the policy for face value or double indemnity which the defendant did not concede as owing to the plaintiff. There must be a consideration or money paid in order to give the receipt and release the effect of settling any other claims not conceded to be due by the defendant to the plaintiff." Ground 8 of the motion for new trial assigns error on this charge, contending, in effect, that it erroneously instructed the jury that the payment of the $44 and the release signed by the plaintiff would not constitute accord and satisfaction. The receipt and release signed by the plaintiff constituted an accord and satisfaction as dealt with in the first division of this opinion, and, accordingly, the charge was error.

The court charged the jury: "I charge you, gentlemen of the jury, that the plaintiff contends that the defendant, through its agents, by fraud and misrepresentation, induced plaintiff to accept the sum of $44 on the policy sued on. Fraud vitiates all contracts. If you find that the defendant, through its agents, through· fraudulent misrepresentations, induced the plaintiff to execute a full receipt and release under the policy, then you should regard such full receipt and release as null and void." Error is

assigned in the 9th ground of the motion for new trial on the ground that the charge was unauthorized because the evidence did not show that the agent obtaining the release from the plaintiff was guilty of any fraud or misrepresentation towards the plaintiff. The agent informed the plaintiff that the policy had lapsed and that the company was due her only the amount of $44 as the paid-up value of the policy. This statement was true because the policy had in fact. lapsed, and did not constitute fraud or misrepresentation. The court erred in submitting the issue of fraud and misrepresentation to the jury.

The court charged the jury: "The defendant, gentlemen of the jury, contends that she knew all the facts in the case, and knowing all of them she signed this release for $44; it was understood that she knew all of them. The plaintiff contends, on the other hand, that there was a course of dealing by which the company had waived the prior contract; that she didn't know and had no idea that that could be shown and established by a course of dealing; that she settled the claim and gave the receipt on the theory that the policy had lapsed, and the $44 paid-up insurance was correct and she accepted it on that theory. You are to say, gentlemen, where the truth of the case lies." Ground 10 of the motion for new trial assigns error on the ground that the effect of the charge was to inform the jury that the plaintiff could avoid the effect of the written release because of her ignorance of the law. The charge was error for the reason urged. No fiduciary relationship existed between the parties and the ignorance of any alleged principle of law as to a course of dealings would not relieve the plaintiff from her act. *Beckmann* v. *Atlantic Refining Co.,* supra.

Error is assigned in grounds 11 and 12 on the refusal of the court to charge the jury, as requested by the defendant, as follows: (a) "I charge you that if the company had established a custom of accepting premiums that were more than four weeks in arrears, which led the plaintiff to believe that she could pay premiums within a reasonable time after they were due, but the plaintiff had for a reasonable length of time paid the premiums within the four-week period provided by the policy, such conduct would authorize you to find that the custom had been abandoned by the parties to the contract. If you find that such a custom existed but that it

had been abandoned and the plaintiff had allowed the policy to lapse, then she would not be entitled to recover and your verdict should be for the defendant." (b) "I charge you that if you should find that there had been a custom on the part of the company's collection agent to accept premiums from the plaintiff on the policy in question after they were more than four weeks in arrears, but that the plaintiff had been warned and notified for a reasonable length of time by an agent of the company that the policy would lapse if the premiums became more than four weeks in arrears, and, thereafter she failed to pay the premiums before they were four weeks in arrears and the insured died after the four-week period just mentioned, then I charge you that the policy was lapsed and the plaintiff would not be entitled to recover." The requested charges should have been given. There was evidence that all premiums from November 13, 1939, to February 25, 1940, about 21 in number, had been paid within the grace period, and such payments on time overcame any previous custom or course of dealings in accepting belated premiums and amounted to an abandonment of the custom. *Davenport* v. *Metropolitan Life Insurance Co.,* and *Gulf Life Insurance Co.* v. *Yearta,* supra. There was also evidence that the collecting agent had warned the plaintiff time and time again that if she did not pay the premiums on time the policy would lapse.

Ground 13 of the motion for new trial assigns error on the refusal of the court to charge, on request, as follows: "I charge you that if there was no dispute between the parties as to the amount that was due under the policy, and the company tendered the paid-up insurance value to the plaintiff, and it was accepted by her and she executed and delivered to the defendant a release in full of all claims due under the policy, the plaintiff would be estopped and precluded from claiming the face value or the double-indemnity amount of the policy was due to her." There was evidence that an agent of the defendant took to the plaintiff a check for $44 as the paid-up value of the policy, and that she recognized that the policy had lapsed and stated that she was glad to get as much as $44 and willingly signed the receipt and release of all claims against the company. It was therefore error not to give the charge requested.

It developed on the trial of the case that the insured was the

stepson of the plaintiff, and the defendant amended its answer and set up that the plaintiff had no insurable interest in the life of the insured. Special ground 14 of the motion for new trial assigns error on the failure of the court to charge the jury on the law of insurable interest. The plaintiff testified that when the policy was issued the agent who took the application knew that the insured was her stepson; that she had an interest in the life of the boy and expected support and help from him in the future because she loved him just like he was her own child, and that he was to help her. "The general rule deducible from the few authorities on the question is that a foster child or stepchild does not, as such, have an insurable interest in the life of the foster or stepparent, or vice versa. It has been held, for instance, that the mere relation of stepchild does not create an insurable interest in the life of the stepfather, and also that a person does not have an insurable interest in the life of a parent of his stepfather merely because of such relationship. However, under the particular circumstances, such as dependency, expectation of aid or benefit when needed, etc., a stepchild or foster child may have an insurable interest in the life of the stepparent, foster parent, or person in loco parentis, or vice versa. Thus, a reasonable expectation on the part of a stepdaughter of pecuniary aid from her stepfather in case of need gives her an insurable interest in his life. The assumption of parental relations, although without any legal obligation, by a man who sends a girl to school and pays her expenses is sufficient to give her an insurable interest in his life, so as to sustain a policy which he procures and assigns to her. Upon like principle, a woman who takes a girl from an orphan asylum and gives her a home, under circumstances calculated to raise reasonable expectation of help and care from the girl during the declining years of the benefactress, has an insurable interest in the girl's life, although she is not formally appointed her guardian." 29 Am. Jur. 323, § 371. In *Turner* v. *Davidson*, 188 *Ga.* 736 (4 S. E. 2d, 814, 125 A. L. R. 401), it was ruled: "As a general rule, a reasonable expectation of pecuniary gain or advantage through the continued life of another person, and consequent loss by reason of his death, creates an insurable interest." See also *Interstate Life & Accident Co.* v. *Frazier,* 40 *Ga. App.* 811 (2) (151 S. E. 529). Under the above authorities and the testimony of the plaintiff, which was uncon-

tradicted, a finding was demanded, as a matter of law, that the plaintiff had an insurable interest in the life of her stepson, and the failure of the court to charge the jury as contended for was not harmful to the defendant.

*Judgment reversed.* *Stephens, P. J., concurs.* *Felton, J., concurs specially.*