30010.   HARTFORD ACCIDENT AND INDEMNITY
COMPANY *et al. v.* CAMP.

DECIDED JULY 13, 1943.   REHEARING DENIED JULY 27, 1943.

*T. Ellon Drake, William E. Ball,* for plaintiffs in error.
*Cecil D. Franklin,* contra.

STEPHENS, P. J.   A. N. Camp was injured on December 8, 1939, as the result of an accident sustained while in the employment of L. B. Gallimore.   On January 15, 1940, an agreement to pay compensation at the rate of $7.70 per week based on a weekly wage of $15.40 was entered into between the employee and the employer and Hartford Accident & Indemnity Company, the insurance carrier.   This agreement was approved and made an award of the Industrial Board on January 31, 1940, and compensation was ordered paid to the claimant beginning December 15, 1939, at $7.70 per week during disability.   On April 2, 1941, the claimant notified the Industrial Board that the insurance carrier "contends that applicant is able to return to work and therefore refuses to continue payments," and that "we also disagree as to percentage of disability."   One June 12, 1941, a hearing was had before Director Monroe of the Industrial Board.   A number of physicians and other witnesses testified relatively to the claimant's injury, the manner in which it was sustained, and the extent thereof.   The director found that the insurance carrier and employer, having agreed to pay compensation to the claimant, which agreement was approved, the insurance carrier was not justified in refusing to continue payment, but was bound by the agreement "until such time as the claimant has returned to work or until they have made application with the Industrial Board either for a hearing or permission to stop the compensation" in accordance with the Code, § 114-706, and that the request for a hearing was not made by the

insurance carrier but by the attorney for the claimant. The director held that "the only way a claim can come before the Industrial Board after an agreement has been executed and approved by the board to pay compensation is on the ground of a change in condition." The director thereupon concluded, "as a matter of law, that it is the duty of the insurance carrier to resume the payment of compensation to the claimant in accordance with the agreements executed by the parties and approved by the Industrial Board and bring the payment up to date." The director further found "from the preponderance of the testimony adduced at said hearing that the claimant is totally incapacitated to pursue manual labor and it is the opinion and he so finds from the preponderance of the medical testimony that his present disability is due to his accidental injury suffered on December 8, 1939," and that "the claimant is suffering from his original injury and the preponderance of all the testimony demands that the director find that the claimant is suffering total disability as the result of the accidental injury." This award was rendered on October 13, 1941. The award was supported by the evidence before the director and no appeal therefrom was taken by the employer and insurance carrier. Thereafter the employer and the insurance carrier applied to the Industrial Board for a hearing on the ground of a "change in condition" of the claimant. On March 11, 1942, a hearing was had before Director C. J. Bruce. At this hearing the insurance carrier and employer introduced the testimony of a physician to the effect that he kept the claimant in the hospital for ten days, giving him every possible kind of examination and test; that he went into the history of the claimant's case very thoroughly; that he made a positive diagnosis that the man had Parkinsonian disease; which by no means is traumatic in origin but is purely systemic; that the claimant's accident by no means precipitated his condition; that the claimant suffered somewhat from hysteria, and that in his opinion the claimant had a twenty-five per cent. disability traceable to his accidental injury. This doctor was not a witness at the hearing in 1941 when the first award was rendered. He testified that he made his first examination of the claimant on December 16, 1941, which was sometime after the first award. This physician testified in part as follows: "the diagnosis was Parkinsonian syndrome involving the right half of the body; hysteria, mild myositis involving muscles of the right

lower lumbro-sacral region. This shaking is not produced by injury. That sort of thing, as far as I know, is never produced by injury. . . Parkinsonian syndrome is what laymen call palsy. Usually through flu or some disease affecting the brain cause it and is the usual cause of it." This testimony was objected to by the claimant on the ground that it had been adjudicated as to what caused the claimant's disability. The doctor further testified that "hysteria was the second part of the diagnosis, and that is based on findings, things rather characteristic of it, evidenced by complete anesthesia over the right half of the body." This testimony was likewise objected to by the claimant on the same ground. This witness further testified "he is not entitled to disability benefits for the Parkinsonian syndrome, which is never traumatic in origin. I predict that the hysteria will disappear after his case is disposed of, but never so long as the case is pending." The witness had previously testified to the effect that the claimant was evidently malingering, that his hysteria was not due directly to trauma and that he had a mild Parkinsonian syndrome which was due to chronic epidemic encephilitis and was not produced by the trauma. He also testified as follows: "Maximum improvement has been reached until his claim for disability benefits has been disposed of. I might state here that it has been my experience, as well as the experience of many others that a case of hysteria will not get well until after the claim is disposed of, because they are constantly worried about it and fretted. The more they think about it the more real it becomes. To them they are very real." The portion of this testimony that maximum improvement has been reached until the claimant's claim has been disposed of was objected to as a conclusion. The doctor then testified that it was not a conclusion but was his opinion based on his experience.

Based on the testimony of the above physician, the single director found that the claimant was suffering from a 25% permanent partial disability as the result of his accidental injury. It is apparent from the reading of the award and findings of the director that his finding was based on the testimony of the physician above quoted. This testimony tended to establish the fact that the claimant's condition on which the first award was based whereby he was totally incapacitated was not the result of the accident sustained by him on December 8, 1939, whereas the award of October 13,

1941, from which there was no appeal was based on the finding of the director that the claimant's condition of total incapacity was the result of the accidental injury sustained by him.

The claimant appealed from the award of Director Bruce to the full board where the award was affirmed with one of the directors, namely Director Monroe, dissenting. Thereupon the claimant appealed to the superior court, which court sustained the appeal and reversed and vacated the award of the full board. To this judgment the employer and insurance carrier excepted. The award under review, on exception to the judgment of the superior court vacating the same, was rendered under Code, § 114-709, which provides that on a change in condition of the claimant the Industrial Board may, on its own motion and on the application of any party in interest, review any award of any settlement and on such review may make an award "ending, diminishing or increasing compensation previously awarded or agreed upon." Under this section on an application to review an award based on a change in the condition of the claimant the cause of the claimant's condition and disability on which the original award or agreement was predicated are to be taken as adjudicated by the first award or agreement. Such original award operates as res judicata as to all questions determined therein and can not be disturbed by the Industrial Board, except where it appears from the evidence on the second hearing that since the first award the physical condition and capacity of the claimant for work has changed, increasing, decreasing or ending his disability as the case may be. *South* v. *Indemnity Insurance Co.*, 39 *Ga. App.* 47 (146 S. E. 45); *U. S. Casualty Co.* v. *Smith*, 42 *Ga. App.* 774 (157 S. E. 351). It is clear that the testimony of the physician, on the second hearing, above referred to and quoted from, to the effect that the palsy from which the claimant was then suffering and was suffering at the time of the first hearing, was not the result of trauma and therefore could not have resulted from the accidental injury sustained by him and that the only condition of the claimant resulting from his original injury was hysteria which caused a 25% disability, was improper and irrelevant and could not be considered by the director for the reason that the finding of the director on which the first award was based was predicated on evidence that the palsy of the claimant which caused his total incapacity for work which was supported

by evidence was traumatic and that the accidental injury of the claimant caused such palsy and this was an adjudication that the palsy which incapacitated the claimant was due to his accidental injury.

The second award by Director Bruce was not supported by the evidence. His award was based on testimony to the effect that the palsied condition of the claimant had decreased and that his total incapacity no longer existed, but the award of Director Bruce was predicated on the theory that the palsy of the claimant was not caused by a trauma and therefore did not result from his accidental injury but that he did have a partial disability as the result of his accidental injury in that his accidental injury caused hysteria which resulted in a 25% partial impairment of his earning capacity.

The testimony of the physician, above referred to and quoted, to the effect that the claimant was not entitled to compensation for the incapacity caused by his palsied condition was not proper. "An expert may aid the jury, but he can not perform the functions of a juror, and under the guise of giving testimony, state a legal conclusion." See *Travelers Insurance Co.* v. *Thornton,* 119 *Ga.* 455 (46 S. E. 678). It was improper for the director to consider such testimony of the physician. Disregarding the testimony of Dr. Mims, the evidence on this hearing is conclusive that the applicant, under practically the same evidence as was adduced on the first hearing, shows a total disability.

The ruling here made is not in conflict with *Williams* v. *United States Guaranty Co.,* 47 *Ga. App.* 508 (170 S. E. 894), and *South* v. *Indemnity Insurance Co.,* supra.

It follows that the superior court properly held that the award of the board, which affirmed the award of Director Bruce, based on a change in the claimant's condition resulting in a twenty-five per cent. partial disability, was erroneous, and properly vacated and reversed the award of the board.

*Judgment affirmed. Sutton and Felton, JJ., concur.*