HILL *vs.* THE JOHN P. KING MANUFACTURING COMPANY.

1. The written contract between the parties is ambiguous in respect to the part the plaintiff stipulated to take in the matter of purchasing machinery, the ambiguity being lodged in these expressions: "Details of machinery for builders of same and purchase machinery placed in plans with driving. Advice and information as to purchase, products for manufacture and any assistance of the

kind useful. Mutual understanding in matters of discretion and correspondence to required extent. All advantages of every kind in prices and discounts to inure to the mfg. company." It is uncertain whether by this phraseology the plaintiff took upon himself the duty of negotiating for the purchase of machinery as the active and responsible commercial agent of the company, or whether he stipulated only to furnish detailed plans and specifications and assist by giving information and advice, and to do so without sharing in any saving, from prices or discounts, to which his services, information or advice might contribute.

2. Parol evidence is admissible to explain a patent ambiguity, but where the words or phrases are not technical, a witness cannot, as an expert or otherwise, give his opinion of the meaning of the instrument.

3. A party to a contract cannot, by proving what he said or wrote to a third person after the contract was entered into, show either what it means or what he understood it to mean. Such evidence is not admissible.

4. The party who wrote the contract and was the author of the ambiguity has the burden of exp'aining it when he seeks to take the benefit of a construction favorable to himself; and if he does not clear up the meaning beyond doubt, the doubt must be given against him.

5. Where a written contract has an apparent meaning at variance with its real meaning, it may bind the author of the ambiguity contrary to its real meaning, if this meaning was so obscurely expressed that the other party was likely to be misled and was misled, and if the circumstances entitled him to timely notice of his mistake, and notice was not given.

March 29, 1887.

Contracts. Written Intruments. Evidence. Witness. Construction. Before Judge Roney. Richmond Superior Court. October Term, 1886.

Reported in the decision.

Frank H. Miller; C. C. Jones, Jr., for plaintiff in error.

Foster & Lamar; J. C. C. Black, for defendant.

Bleckley, Chief Justice.

This corporation, being about to construct a cotton mill,

employed Hill, who was a civil and mechanical engineer, to furnish plans and superintend the construction. It appears also that he was skilled in the purchase of machinery, having had much experience in that line of business, as well as in the more direct line of his profession. The contract appears to have been agreed upon orally between Hill and the president of the corporation. The terms of it were reduced to writing by the president addressing a letter to Hill, asking him to define the kind, nature and extent of the services that he was to render, and naming as the price for the whole, $3,500. Hill replied to this letter, giving first a general statement of the services, and then entering into details at some length. This letter seems to have been satisfactory to both parties; and the duties of Hill as engineer and superintendent commenced; but before they had proceeded very far, some correspondence took place between him and the president with regard to purchasing machinery; and this resulted in instructions from the president to Hill to make the purchases. He thus became the active and responsible party in conducting negotiations and effecting purchases of machinery, and also some supplies for the mill. There was nothing said about compensation for these services; and when they were all finished, the parties compared notes and ascertained that they were at a misunderstanding with respect to whether these services were rendered under the written contract, or by employment outside of that contract. Failing to adjust the matter themselves, Hill brought his action against the company for more than $4,000 as compensation for these services. That action went to trial, and the letters were introduced in evidence, and much other evidence was introduced; after which the court granted an order of nonsuit; and that judgment is the one now under review.

1. We have attentively considered the letters embracing the written contract, and find that Hill's letter is ambiguous in respect to the part which he stipulated to take in

the matter of purchasing machinery, the ambiguity being lodged in these expressions: "Details of machinery for builders of same and purchase machinery placed in plans, with driving. Advice and information as to purchase, products for manufacture and any assistance of the kind useful. Mutual understanding in matters of discretion and correspondence to required extent. All advantages of every kind in prices and discounts to inure to the mfg. company." It is uncertain whether by this phraseology he took upon himself the duty of negotiating for the purchase of machinery as the active and responsible commercial agent of the company, or whether he stipulated only to furnish detailed plans and specifications and assist by giving information and advice, and to do so without sharing in any saving from prices or discounts to which his services, information or advice might contribute.

2. The plaintiff, recognizing that the contract was ambiguous, offered evidence with a view to clear it. Amongst the evidence offered was the testimony of a witness who was a manager of a machine shop, and skilled in the manufacture of machinery, and in milling and mill engineering. He had had large and very long experience in producing machinery and in selling it. This witness was asked to interpret the contract as an expert, and his evidence was rejected. Parol evidence is admissible to explain a patent ambiguity, but where the words or phrases are not technical, a witness cannot, as an expert or otherwise, give his opinion of the meaning of the instrument. We do not think there are any words or terms in this contract which are used out of the ordinary sense of language. The phraseology is elliptical, and doubtfully connected; there is uncertainty as to the separation of the words into sentences; whether there are two sentences where the punctuation indicates but one, seems uncertain; but we do not know of any class of persons recognized by the law as specially skilled in construing ambiguous writings. It might be, and perhaps would be a use-

ful employment, but we do not know that anybody has taken it up as a business to ascertain the doubtful meaning of men who do not write with clearness. Obscure style is a literary defect, and we are not aware of any peculiar fitness of a maker of machinery or dealer in machinery for solving literary problems. We think the court was right in excluding the testimony.

3. The same witness was offered to prove the meaning of the instrument, or else the plaintiff's understanding of its meaning, by what the plaintiff had written about it to the witness, or rather, perhaps, by an inference which the witness had drawn from a letter which he had received from the plaintiff. This also was excluded. A party to a contract cannot, by proving what he said or wrote to a third person after the contract was entered into, show either what it means or what he understood it to mean. Such evidence is not admissible.

4. We recognize that the party who wrote the contract, made it ambiguous, and executed it in that condition, must explain the ambiguity in order to obtain a construction of it in his favor. The author of the ambiguity has the burden of explaining it when he seeks to take the benefit of a construction favorable to himself; and if he does not clear up the meaning beyond doubt, the doubt must be given against him. Code, §2757, ¶4.

5. But suppose that he does clear up the doubt; suppose that by extrinsic evidence he makes it appear that the real meaning of this contract was, as he contends, that it did not include the services for which he now prosecutes his action; it will not follow with certainty that he ought for this reason to recover. Where a written contract has an apparent meaning at variance with its real meaning, it may bind the author of the ambiguity contrary to its real meaning, if this meaning was so obscurely expressed that the other party was likely to be misled and was misled, and if the circumstances entitled him to timely notice of his mistake, and notice was not given. This is simply the

expression in another form of the rule of the code, that where the parties understand the contract differently between themselves, and one knows that the other understands it in a particular sense, that sense is the one in which it shall be interpreted and administered. Code, §2756. In this case, if Mr. Hill, in replying to the president's letter, put a meaning upon the surface, and another under the surface, though the one under the surface be the true one, if the president looked alone to the surface meaning and was justifiable in looking to that meaning, and if in subsequent dealings, such as giving and receiving orders to go on to purchase, Mr. Hill had enough to apprise him or to excite enquiry as to how the president understood the contract, and did not give the president notice of his mistake, but went on and rendered the service under circumstances that made it unfair dealing not to give such notice, then he ought not to recover. All this, however, is matter for the jury. They should determine, under the evidence intrinsic and extrinsic, what the contract really meant, and then what construction the president of the mill had a right to put on it. If its apparent meaning was such as to mislead with reference to its true meaning, and if it did mislead and the president acted upon a misconstruction, and Mr. Hill had reason to think that he did act upon it in giving orders to go on and purchase, and Mr. Hill went on, but said nothing about his expecting any compensation for rendering ·these services, then Mr. Hill ought not, and cannot, collect anything for them. But if an illusory meaning does not lie upon the surface in such a way as to mislead, or if it does, but did not mislead, or if it did mislead, and Mr. Hill had no reason to think or apprehend that it probably had done so, then there is no legal obstacle to a recovery.

The court erred in granting a nonsuit.

Judgment reversed.