20938.   BANKERS HEALTH AND LIFE INSURANCE CO. *v.* GIVENS.

DECIDED MARCH 31, 1931.

*Cumming & Harper, Turpin & Lane,* for plaintiff in error.
*Nathan Jolles, I. S. Peebles Jr.,* contra.

LUKE, J. The petition brought by Allen Givens against the Bankers Health and Life Insurance Company to the superior court of Richmond county makes substantially the following case:

1. Defendant is a corporation doing business and having an agent and offices in said county.

2. "Petitioner is the beneficiary of a certain 'whole-life policy' issued by said insurance company on the life of Josie Givens, his wife, now deceased, in the sum of $225."

3. "Said policy, together with proof of death, has been surrendered to said insurance company."

4. "Said policy issued May 13, 1929, and the death of the insured occurred November 14, 1929."

5. "The cause of death as set forth in the proof of death was pellagra."

6. "Said policy has a clause limiting the liability of the company to one half of the value of the policy in the event of death by certain diseases therein named."

7. "Your petitioner avers that on December 7, 1929, the agent, in attempting to adjust the policy with your petitioner, informed your petitioner that the disease known in medical science as pellagra was contained in the policy surrendered to the defendant company, and paid to your petitioner one half the value of said policy for that reason, to wit: that it was set out in the clause limiting their liability to one half of the value of the policy as a disease that the company would only pay one half of the value."

8. Said representation made by said agent of defendant to petitioner was material, was relied upon by petitioner, and induced him to accept one half the value of the policy.

9. "Said representation was false and was made knowingly so."

10. "Your petitioner avers that he had no means of knowing otherwise, and that a confidential relation existed between the plaintiff and the defendant, by reason of the contract of insurance and the fact that the same is highly technical in its terms and your petitioner uneducated, and, having surrendered the policy as required by the company, had nothing to do but rely on the defendant to pay the full amount according to law."

11. "Your petitioner avers he has been damaged in the sum of $112.50; and petitioner further claims, under the facts stated herein, that the company has acted in bad faith, and claims damages and attorney's fees as allowed by law."

After admitting paragraphs 1, 3, 5, and 6 of the petition, admitting issuing the policy of insurance described in paragraph 2 of the petition, demanding strict proof of paragraph 4 of the petition, and denying paragraphs 7, 8, 9, 10, and 11 of the petition,

the defendant further pleaded as follows: "That on May 13, 1929, it issued to Josie Givens its policy of insurance No. B458432, payable to Allen Givens as beneficiary thereunder and in accordance with the terms thereof. Defendant shows further that one Allen Givens, on November 16, 1929, advised defendant that the said Josie Givens had died on November 14, 1929, of pellagra, giving as his source of information the statement of the deceased. Defendant further shows that on investigation of the claim this defendant learned that there had been certain misrepresentations made by the insured in procuring said policy, and that there was grave doubt as to the cause of death of the insured being pellagra as claimed by the beneficiary. After various negotiations, it was agreed between this defendant and the said Allen Givens that the claim should be settled in full on payment of $112.50, which amount was by this company paid to the said Allen Givens on December 7, 1929, in full and complete settlement, release, accord and satisfaction of any and all claims against said company on the policy sued on. Defendant further shows that the amount was accepted by said Allen Givens freely and voluntarily, that the said Allen Givens could read and write and well understood what he was about, and that said settlement was entirely satisfactory to the said Allen Givens, and was not procured by fraud or artful device on the part of defendant, but was made after negotiations between the parties and in full and final settlement of the claim between the parties. Defendant shows that it is not indebted to the said Allen Givens in the sum alleged or in any sum whatever, and prays to be hence discharged with its reasonable costs."

There was no demurrer in the case, and the jury rendered a verdict for the plaintiff in the sum of $112.50. The exception here is to the judgment overruling the motion for a new trial, containing the general and three special grounds.

The full amount collectible under the policy was $225, but limitation 6 of the contract provides that if death results from certain specified diseases (of which pellagra is not one), "death benefits are . . limited to one half of the full face value named on the first page hereof should death occur between six months and one year from the date of the policy;" and further that "in the event of the death of the insured within one year of the date of this policy when such death is the result of . . disease contracted prior

to the date of this policy, . . there shall be no liability whatever under this policy."

Allen Givens testified substantially as follows: "My wife's name is Josie Givens. Josie Givens died on November 14, 1929. . . I accepted a settlement from Bankers Health and Life Insurance Company in the amount of $112.50. The face of the policy called for $225. At the time the release was signed, Mr. Mixon, manager of the insurance company, said the doctor said my wife died of pellagra, and that they were not only to pay half benefit for that disease. . . He said to me that they only paid half of the face value of the policy when persons died of pellagra." Here the court asked the question: "And because of that statement you signed a release?" Givens replied: "Well, in that way, that was all I seen to do." The witness further swore on direct examination: "I had not the policy in my possession when I went for this money. . . I think the company had it. I am sure they did. I can't read limitation 6 of this policy. The policy was six months and one day old when my wife died. Mr. Mixon didn't tell me that pellagra was in these diseases just named." (Counsel had just read "limitation 6" of the policy to the witness.) On cross-examination Allen Givens swore in part: "No, I can't read so well. I don't care to read any right now. I can read a little. My wife was taken sick about eight weeks before her death. She was a healthy woman the day she took the policy out. I know she was healthy, because she didn't complain any. When I went to collect this policy Mr. Mixon told me . . that because my wife died of pellagra there was some question about owing me the money. . . I don't understand everything that is in the policy. . . I didn't go to him [Mr. Jolles, attorney of record for defendant in error] before I was paid this half amount. I couldn't name the people who were present when Mr. Mixon paid me. Several were there. Sherrill was there, I know. I am still dealing with him. . . . He always treated me right. Mr. Mixon asked me whether or not I was satisfied, and I told him I wasn't. . . He told me he wanted me to be satisfied, and I told him I wasn't. He told me if I didn't take it, I might not get anything. I didn't want to take it. I took it simply because I owed Mr. Sherrill, and I owe him now for burial expenses. They were pushing me, and I hadn't even any money to pay him, and I had to get hold of some-

thing to help him along. He was bothering me so much about it, and for that reason I did it, but I wasn't satisfied. I don't remember that Mr. Mixon said anything about he might not pay me anything if I didn't take that. He said a whole lot of things. All I know, there was some money in hand, and I didn't pay much attention to what was said. I took it because I needed it right then. . . I can sign my name. That is my name. I suppose I signed it. I know it is my name. Other people could write it same as I could."

A. M. Sherrill, sworn for plaintiff in error, testified: "I was present at the time of certain negotiations with Allen Givens on insurance claim. As undertaker, I buried Givens' wife, and I was interested in the payment of the burial expenses. I went in compliance with a request from the manager that they were ready to settle. There had been an assignment to me of part of the insurance money. My interest was to get the money. . . On the day of the settlement the manager stated very clearly . . that the Company was only liable for one half benefit under that policy, and I think the half was $112.50. I think that was what he stated. . . They read the claim over and said it was for such and such an amount, and that 'if you are not satisfied you need not sign it, you do not have to accept it.' We both signed, and the check was tendered, and we indorsed and collected from the bank. Mr. Mixon explained to Givens that it was the full amount the company was liable for. He said: 'Allen, if you are not satisfied with that, you don't have to sign it.' Allen signed for it, and afterwards said: 'Well, I am signing for it, but I am not satisfied.' I remember something being said about pellagra. . . I don't remember that he said the company wouldn't pay but one half benefit for pellagra. He said the company was liable for half benefits because of a constitutional disorder."

Miss Eva May Palmer, an employee of the insurer, testified: that she heard Mr. Mixon tell Givens to sign the receipt in full only in the event he was satisfied with the settlement; that he wanted him to think it over and understand fully what he was doing; that she did not hear pellagra mentioned; and that the company required that policies be sent in with proofs of loss. Mr. C. E. Mixon testified, in effect, that he was local manager of the insurer; that he made a thorough investigation of the matter and reached the

conclusion that the insured was sick with pellagra when the policy was issued; that the insurer thought it was entitled to a compromise settlement because the woman was not an insurable risk at the time she was insured, and "offered a compromise settlement rather than stand a lawsuit;" that "after considerable question had been raised about the statement of fact contained in the application . . a fifty per cent. settlement was agreed upon;" that witness stated the company's position fully to Givens, and told him that he had all the time he wanted and could investigate it further, and see a lawyer if he wanted to do so; and that he further told Givens that if he was not satisfied he should not sign, because the receipt and draft were in full settlement of the claim.

The following writing was admitted in evidence:

"$112.50. 　　　　　　　　　　　　　Augusta, Ga., 12-7-29.

"Received of The Bankers Health and Life Insurance Company, of Macon, Ga., the sum of one hundred twelve and 50/100 dollars, in full and final settlement, release, and accord and satisfaction of any and all claims against said company under policy No. B458432 on the life of Josie Givens, deceased." This receipt was signed by Allen Givens, and his signature was witnessed by C. E. Mixon and A. M. Sherrill. On the back of the receipt appears this language: "Compromise settlement made on account of recent issue of the policy, settled satisfactorily for one half the full amount. (Signed) Allen Givens." The draft for $112.50 given in settlement of the claim contained this statement: "Indorsement of this draft shall constitute an acknowledgment of the payment in full of all claims under the policy named herein." This draft was indorsed by Allen Givens and A. M. Sherrill.

■ We shall first consider the second special ground of the motion for a new trial, because it raises a question which should be decided at the outset of our decision. The ground is that the court erred in charging "law applicable to an action ex delicto;" that is to say, "an action in fraud and deceit," for the reason that the action "was on an insurance policy" and sounded in contract. The declaration alleges in substance that the insurer, through its agent, made to plaintiff a false and fraudulent material representation, the falsity of which was known to defendant and unknown to plaintiff, which induced plaintiff to settle a valid death claim against defendant for half its value, to wit $112.50, to the injury and

damage of plaintiff in said sum. The petition sets out the elements of an action for fraud and deceit under the Civil Code (1910), § 4410, and the court did not err in charging law applicable to such an action. *Cheney* v. *Powell*, 88 *Ga.* 629, 632 (15 S. E. 750).

■ The first special ground of the motion for a new trial alleges that the court erred in refusing a written request to charge as follows: "If you find that the amount claimed by the plaintiff under the insurance policy was a disputed amount, and that the plaintiff accepted a check for less than the amount that he claimed, which check contained a statement that it was in settlement of all demands, that plaintiff indorsed check and collected and retained the money, then he is not entitled to recover anything further on the policy." The foregoing requested charge omits entirely the theory on which the action appears to have been brought. The giving of such a charge would have amounted to the direction of a verdict for the defendant, and the court properly refused the request.

■ In the third and last special ground the movant complains of this charge: "If you believe from the evidence, and by a preponderance of evidence, that when this beneficiary went to settle this claim, the agent having the policy, if he did have it, represented to the plaintiff that when persons died of pellagra they were only liable for half the face value of the policy, and you further find that this plaintiff was an ignorant and unlettered man, and that he acted upon those representations of the agent and thereby signed a release and accepted a half of the value of it, he would be entitled to the other half of it." It is alleged in the ground that the court erred in so charging because "said charge was contrary to law, and any earlier portions of the charge correctly setting forth the law were nullified by this last-above-quoted portion of the charge, so that the charge, taken as a whole, was harmful, in that it left with the jury as the last utterance of the court a charge which was contrary to the law, and therefore prejudicial and harmful."

"A bare complaint that 'the court erred' in giving a particular instruction brings nothing into question except soundness, in the abstract, of the proposition or propositions therein announced. If the instruction is abstractly correct, the question of its inapplicability to the case in hand must be distinctly made by clearly pointing

out how or why it was inappropriate." *Jones* v. *State,* 135 *Ga.* 357 (6) (69 S. E. 527); *Central Ry. Co.* v. *Bond,* 111 *Ga.* 14 (36 S. E. 299); *Mauldin* v. *Gainey,* 15 *Ga. App.* 353 (8) (83 S. E. 276). Under the foregoing authorities the exception under consideration is entirely too indefinite to raise any question, except, perhaps, the abstract correctness of the charge; and, when considered in connection with its context, the excerpt in question does not show ground for a reversal of the judgment denying a new trial.

■ We come next to the general grounds of the motion for a new trial. It will be observed that the alleged fraud was not any false representation as to the contents of the paper actually signed. It was alleged, and sought to be proved, that the insurer's agent falsely represented to the insured that under the terms of the contract he could only collect one half of the face value of the policy if the beneficiary died of pellagra. At the time of the negotiations leading up to the settlement, the policy of insurance was in the possession of the insurer, and plaintiff knew that it was. Though plaintiff was frankly dissatisfied with the settlement, and so stated, he signed the receipt without taking any precaution in the premises. He never asked that the policy be shown to him or read to him, and never sought advice as to his rights thereunder prior to signing the receipt. Indeed, the plaintiff's own testimony leads strongly to the conclusion that he signed the paper under protest, and did so because he needed the money to pay his creditors. Surely there was no such relation of trust or confidence existing between the parties as would warrant the plaintiff in abandoning all caution and depending entirely upon the mere statement of the agent of the insurer. In short, we do not think that the insurer practiced upon the beneficiary any such artifice, trick, or contrivance as could have legally misled him. This conclusion appears to be in accord with the reasoning in *Hayes* v. *East Tenn., Va. & Ga. Ry. Co.,* 89 *Ga.* 264 (15 S. E. 361), where, as here, the action was for fraud and deceit in procuring an accord and satisfaction. See also *Howard* v. *Ga. Home Ins. Co.,* 102 *Ga.* 137 (29 S. E. 143). We do not concede this to be a case like that of *Deibert* v. *McWhorter,* 34 *Ga. App.* 803 (2), 804 (132 S. E. 110), "where the basis upon which the contract was entered upon lies in the existence or nonexistence of certain material facts, the verity of which needs must

be ascertained from the statement of one acquainted with such facts."

In our opinion, the trial judge erred in overruling the general grounds of the motion for a new trial, and for that reason alone the judgment overruling the motion is reversed.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*