### 26221. EQUITABLE LIFE ASSURANCE SOCIETY *v.* MINTER.

DECIDED NOVEMBER 27, 1937.
ADHERED TO ON REHEARING, DECEMBER 17, 1937.

*Colquitt, MacDougald, Troutman & Arkwright, Robert S. Sams, Dudley Cook,* for plaintiff in error.

*R. Beverly Irwin,* contra.

STEPHENS, P. J. Effie Minter brought suit against the Equitable Life Assurance Society, to recover as beneficiary under a policy of insurance issued by the defendant on the life of the plaintiff's husband, Albert Minter. Among the defenses interposed were that by the terms of the policy it was void, in that the insured was not in good health at the time of the payment of the first premium, that in his application, which was a part of the policy, he had made false representations as to facts which were material to the risk, and falsely stated that he never had nor had he been treated for certain diseases, and made a false statement respecting the names of the physicians who had treated him during the past five years. After the introduction of evidence a verdict was rendered for the plaintiff. The defendant moved for a new trial on the general grounds only. To a judgment overruling the motion the defendant excepted.

It appears from the evidence that the application for the policy was made on May 9, 1932, that the policy bore date of issuance of May 18, 1932, that the first premium was paid on May 20, 1932, and that the insured died on July 7, 1932. There was evidence

to the effect that the insured, during the month of April, before his making application for the policy, and until he became sick on June 7 following, was a strong, healthy, robust man, and plowed in the fields. While there was evidence that during April, before the time of the application for the policy, a druggist filled five prescriptions brought to him by the insured, which called for medicines usually prescribed in the treatment of certain of the diseases which the insured had stated in his application he had not had or been treated for, such as cardiac trouble, kidney trouble, digestive troubles, Bright's disease, and coughs, and while these prescriptions purported to be issued in the name of the insured, there was no evidence that the insured himself took any of the medicines prescribed. It also appears from the evidence that during this same period the insured's daughter had been taken for treatment to the same physician who had issued these prescriptions, that on several occasions (two of them in April) the insured brought home medicines from this physician for his daughter, that the daughter died later in the year, after the insured had died, and died with influenza and kidney trouble, which was, in the language of the plaintiff, "the same as [the insured] died with." The certificate filed with the Department of Public Health, however, as to the cause of the daughter's death stated that it was pneumonia with miscarriage as a contributory cause. The physician who issued these prescriptions was dead at the time of the trial. There was no testimony either from him or from any one else to the effect that before the making of the application for the policy the insured was suffering from any disease referred to in his application, for which any of the medicines contained in the prescriptions were appropriate remedies, or that the insured had suffered from any disease. Any statement made by the physician who issued the prescriptions, to the druggist who filled the prescriptions, contained in the testimony of the druggist, who was a witness for the defendant, that the deceased had any physical trouble or ailment, is purely hearsay and has no probative value whatsoever. The druggist who filled the prescriptions stated, that, from his observation of the insured at the time when the prescriptions were filled, the insured "did not look like he had all these troubles."

While the insured died on July 7, 1932, less than three months

after the issuance of the policy, it appears from the evidence that he had been robust and in good health and was working in the fields until he became ill on June 7, just a month previously, and that as a result of this illness he died. It appears from the physician's certificate that the cause of the insured's death was acute nephritis and possibly angina pectoris. It appears from the evidence of the other physician, whom the insured consulted after the policy was issued and shortly before the insured's death, that the symptoms appearing at the time could have arisen between May 9 and June 10—between the date of the application and the date of the issuance of the policy. It therefore does not appear from the evidence, conclusively and without dispute, that the insured, before making application for the issuance of the policy, had suffered from any of the diseases which he stated in the application he had not suffered from, or that at the time of the issuance of the policy or the payment of the first premium he was not in good health.

It does not appear from the evidence, conclusively and without dispute and as a matter of law, that the physician who issued the prescriptions, and whose name was omitted from the application as a physician who had treated the insured, had as a physician treated the insured or been consulted by the insured for his own ailments. It appears from the evidence that this physician and the druggist who filled the prescriptions were partners in the operation of the drug-store in which the prescriptions were filled, and that the physician had his office at this drug-store. It appears from the testimony of the druggist that every one of the five prescriptions in question was telephoned to him by the physician, and the druggist reduced them to writing and placed the insured's name thereon, filled the prescriptions, and gave the medicine to the insured. Three of these prescriptions were filled in one day, April 11; the other two were filled two days later—April 13. The testimony of another physician was as follows: "At the head of a prescription, when it is given to a person, for instance Albert Minter [the insured], it could have been given to him for somebody else. He could have gotten a prescription for somebody else, and have had his name written on it, but that is not usually true, but it could have been done." The druggist who filled the prescriptions testified that he saw the deceased "come in to consult"

the physician who issued the prescriptions, that the deceased asked for this physician and waited a few minutes until the physician came in, and then went into the physician's office, and after that the physician talked with the witness about the insured. The druggist further testified, that he did not see the physician examine the insured, nor did he see the insured take any of the medicine, and did not know of his own knowledge that the insured ever took any of the medicine; that the insured when he "came here" stated that he was not getting along so well, and wanted to try this physician; that the insured had been a regular patient of this physician for a long time, for "three or four years;" that it had "been some time," but he did not know the exact time, since he had seen the insured before the insured came to the physician "this time;" and that he did not know what the doctor had treated the insured for "then," but that the doctor had always had an account against the insured. There was no further evidence tending to show that the insured, before his application for the policy, was treated by this physician or consulted him for himself. The insured's brother testified to the insured's going to this physician for treatment, but his evidence was vague and uncertain as to the time, and it does not show that the treatment was before the date of the making of the application for the insurance. Any statement by the physician indicating that he had treated the insured was hearsay and of no probative value. Any statement made by the insured to the effect that he intended to consult the physician and did consult him, if admissible as an admission, was evidentiary only, and not conclusive as to the fact stated.

It does not appear from the evidence, conclusively and as a matter of law, that the physician who issued the prescriptions and which the druggist filled after having received them by dictation over the telephone, prescribed the medicines called for by the prescriptions for the use of the insured, notwithstanding the druggist placed the insured's name on the prescriptions. It appears from the evidence that the insured's daughter went to see this same physician about this same time, and that the insured about this same time went to this same physician and obtained medicine for the daughter. In the light of the testimony these prescriptions might have been for medicines to be used by the daughter. The testimony which most strongly points to the fact that the insured con-

sulted the physician professionally and was treated by the physician was the testimony of the druggist to the effect that the insured was "a regular patient" of the physician "for a long time, three or four years," and that the physician always had an account against the insured. The witness stated that it had been some time since he had seen the insured before he came to the physician to obtain the prescriptions testified about, that the witness did not know the exact time, and the witness did not know what the doctor had treated the insured for "then." This testimony, when taken in connection with the other testimony, and in connection with the witness's statement that he did not know what the doctor was treating the insured for, does not establish, as a matter of law and without dispute, that on the occasion of the visits testified to the insured was consulting the physician for his own ailments, or that the physician was treating the insured professionally and as a physician. The jury could have inferred that the druggist's statement that the insured was a "patient" of the physician was a mere conclusion of the witness. And since there was evidence that the insured was in good health and was not sick before the filing of the application, and that several times he went to the physician to obtain medicine for his daughter who was sick, the evidence is not conclusive that on the occasions when he called on the physician, as testified to by the druggist, he was consulting the physician for his own ailments or was treated by the physician. If the insured consulted the physician for himself, the evidence is not conclusive as to what the consultation was about, or as to what the physician treated him for.

It does not appear from the evidence, without dispute or contradiction, that the physician treated the insured for, or was consulted about, anything that was material to the risk. "The term 'medical or surgical attention' in questions propounded to the applicant for a sick-benefit insurance policy, as to whether he had received 'medical or surgical attention within the past five years,' means medical or surgical attention for some illness or disease of substantial importance or of a serious nature, and not consultation, treatment, or attendance concerning some trivial or temporary indisposition or feeling which has passed away without affecting the general health. Crosby *v.* Security Mutual Life Ins. Co., 86 App. Div. 89 (83 N. Y. Supp. 140) ; Couch on Insurance, § 889." *Fed-*

*eral Life Ins. Co.* v. *Summergill,* 45 *Ga. App.* 829 (166 S. E. 54) ; *New York Life Ins. Co.* v. *Watson,* 48 *Ga. App.* 211 (172 S. E. 602). It does not appear conclusively from the evidence, as a matter of law, that the insured, before making application for the policy, had consulted the physician for himself, or had been treated by this physician, or that, if he had consulted the physician and had been treated by him, he consulted him for or was treated by him for any matter material to the risk. It therefore does not appear from the uncontradicted testimony, conclusively and as a matter of law, that the insured, in omitting the name of this physician from the names of the physicians stated in the application as physicians he had consulted or who had treated him, made a misstatement that voided the policy. A verdict for the defendant therefore was not demanded as a matter of law, but the verdict for the plaintiff was authorized.

*Judgment affirmed. Sutton and Felton, JJ., concur.*