40071. WELLS, by Next Friend v. METROPOLITAN LIFE INSURANCE COMPANY.

828

DECIDED APRIL 15, 1963—REHEARING DENIED MAY 24, 1963.

*Randall Evans, Jr.,* for plaintiff in error.

*Rodney S. Cohen, Robert E. Knox,* contra.

EBERHARDT, Judge. ■ Under the general grounds plaintiff insists that the provisions of the policy as contained in the quotation above from it as paragraph 1 and those in paragraph 3 for maternity benefits are conflicting, that he was entitled to have the policy construed in his favor and against the company, and that the evidence demanded a finding that his wife's pregnancy was a "sickness or physical condition [that] had not manifested itself prior to" September 16, 1959, the date of the policy.

It is true that if the provisions of an insurance policy are ambiguous, or if the provisions in it are conflicting, it is to be construed in favor of the insured and against the company. *Gill v. Federal Life &c. Co.,* 86 Ga. App. 455, 458 (71 SE2d 683). However, there are other rules of construction which must also be employed. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." *Code Ann.* § 56-2419. Even when there is an ambiguity "the construction must be reasonable and not strained." *Mattox v. New England Mut. Life Ins. Co.,* 25 Ga. App. 311 (103 SE 180). "Courts are not called upon, because of the rule that contracts of insurance are to be strictly construed against the insurer, and because the contract itself is one of insurance, to call forth doubt, through construction of plain and unambiguous provisions of such a contract." *Aetna Life Ins. Co. v. Padgett,* 49 Ga. App. 666, 669 (176 SE 702). "A construction of an insurance policy to determine the liability imposed by it involves a consideration of *all* those essential provisions which fix, create, limit, or enlarge liability." *Fisher v. American Cas. Co.,* 194 Ga. 157, 159 (21 SE2d 68). "The whole contract must be construed together, so as to give effect to each material and valid clause thereof. It would be contrary to all rules of construction to select one clause in a contract and construe it to the exclusion of other clauses bearing on and affecting the same subject matter, and at variance with it. It is not a question of ambiguity, as argued; for both clauses are perfectly clear when standing alone. It is a

question of the meaning of both clauses of the contract when construed together." *Marbut v. Empire Life Ins. Co.*, 143 Ga. 654, 657 (85 SE 834).

We find no ambiguity or conflicting provisions in the contract here. It is obvious that the exclusion in paragraph 1 of the policy refers to conditions other than pregnancy, and that the conditions for coverage or non-coverage of maternity benefits are spelled out in paragraph 3.

But even if these provisions were held to be ambiguous it was a question to be resolved by the jury as to whether the pregnancy of plaintiff's wife "had not manifested itself" prior to the date of the policy. While she testified on the trial, "As far as I know on that date [September 16, 1959] I was not pregnant. As far as I believe I was not pregnant. There were no manifestations of pregnancy about me. As far as I know, 31 days later, on October 17, I was not pregnant," this was not a positive assertion that she was not pregnant. On cross-examination she admitted that her last menstrual period before the delivery had been about the first of August, 1959, and that when she was suffering from nausea and dizziness on September 23 she went to see Dr. LeRoy, who then told her that based on his examination of her he thought her to be pregnant. He testified on the trial that based upon his examination of Mrs. Wells it was his opinion that she was pregnant when he saw her on September 23. Dr. Mulherin, the physician who attended the delivery, testified that it was his opinion that she became pregnant around the middle of August.

There was sufficient evidence upon which the jury might have concluded that she was pregnant prior to the time the policy was issued and that it had manifested itself—at least in that her menstrual periods had ceased to appear. See *Lovett v. American Family Life Ins. Co.*, 107 Ga. App. 603 (131 SE2d 70).

Additionally, it is to be noted that the experience of humankind and the consensus of medical authority is that there is normally an interval of nine calendar months or 270 days from the inception of pregnancy to the date of parturition or delivery. There are and have been, of course, exceptional cases in which the interval is either greater or lesser in time due to peculiar

conditions that may exist, but in the absence of any showing of some unusual or peculiar condition that may affect the interval it is to be presumed that the gestation and birth of the infant occurred according to the ordinary course of nature. People v. Swiggy, 69 Cal. App. 574 (232 P 174). "A presumption upon a matter of fact, when it is not merely a disguise for some other principle, means that common experience shows the fact to be so generally true that courts may notice the truth." Per Holmes, in Greer v. U. S., 245 U. S. 559, 561 (38 SC 209, 62 LE 469). Here the attending physician testified that the delivery was in all respects normal, as was the child itself. The normal gestation period of human experience would place the time of conception or beginning of Mrs. Wells' pregnancy around August 5, 1959.

Under our view of the policy provisions, however, unless the pregnancy began more than thirty days after the policy date no maternity benefits were afforded. Certainly there was an abundance of evidence upon which the jury could conclude that Mrs. Wells was pregnant within the thirty-day period. Their verdict has the approval of the trial judge and it is final and conclusive upon all issues of fact.

■ Headnotes 2 through 8 need no elaboration save headnote 6 which deals with special ground 8 of the amended motion wherein movant excepts to the refusal of the court to give the following requested charge: "Gentlemen of the jury, I charge you with reference to witnesses who testify not as experts, such as doctors or persons who give opinions, that a witness is not to be arbitrarily disbelieved where that witness testifies to a fact, unless such witness has been, in your opinion, impeached. As applied to this case, the testimony of Mrs. William H. Wells, the mother of the child about which this suit has been brought, would be entitled to have her testimony credited by you and accepted unless you find that her evidence has been discredited or impeached."

Mrs. Wells was the wife of the plaintiff. The issue to be determined by the jury was whether her pregnancy began more than 30 days after the issuance of the policy. On this issue she did not testify to *any fact that was in issue*, but rather gave her

*opinion* as to whether she was pregnant. She testified that she was married to the plaintiff on May 3, 1959, that the insurance policy involved in the suit was issued September 16, 1959; that in May [1960] she was hospitalized at St. Joseph's Hospital in Augusta where she delivered a male child on May 5 with Dr. Charles Mulherin as the attending physician; that the doctor's bill was $165, the hospital bill $119 and the drug bill $50; that because of dizziness and weakness she had gone to Dr. LeRoy on September 23, 1959, but that as far as she was concerned that consultation had nothing to do with the question of pregnancy; that Dr. LeRoy discussed the matter of pregnancy with her on that occasion, and that when she conferred with him again in October he again informed her of the possibility of pregnancy and referred her to Dr. Mulherin in Augusta whom she consulted at regular intervals until the baby was delivered; that the child was normal in every respect, but that she kept no baby book or other record of its weight but that it weighed 23 pounds at the time of the trial; that she had entered the hospital on Wednesday night, delivered the baby around 3 o'clock Thursday morning and went home on Sunday; that she had experienced fainting spells and dizziness more than once, and on occasions before she was married; that her menstrual periods had been irregular; that her last menstrual period before the birth of the baby was in August of 1959, and that she had none in September; that she could not say whether the signature purporting to be that of her husband on the claim papers was in fact his or not. *Not one of these facts was in issue. Not one of them was contested.* The verdict appears to have been made on the acceptance of them as true, for it is entirely consistent with them. Thus, as to them, if error, failure to give the charge was harmless. "Where a charge, if given as requested, would not have changed the verdict, its refusal, though error, is no ground for new trial." *Park & Iverson v. Piedmont &c. Life Ins. Co.,* 51 Ga. 510 (5). "A new trial will not be granted for failure to give a request which, if correctly given, could not have affected the verdict." *Carter v. Monroe,* 65 Ga. 542 (4).

She testified that "So far as I know or believe, I was not pregnant on September 16, 1959, or 31 days later on October

17," and "I had no reason to believe I was pregnant." This was not testimony as to any *fact* in issue, but rather an expression of the witness' *opinion* as to the matter. *Code* § 38-1708. As to that the request had no application and a refusal to give it was proper.

She testified that "There were no manifestations of pregnancy on that date [September 16, 1959]." Here again there was no testimony as to any *fact* in issue, but simply a *conclusion* of the witness, unsupported by the facts to which she testified concerning her menstrual periods. *Code* § 38-1708. As to this testimony the request had no application, and was properly denied.

She testified that on an occasion shortly before Christmas she had seen Buck Wade, the insurance agent who had written the policy, and that "I asked Buck would my policy pay for the baby, and he said that it would." Here the witness testified as to a *legal conclusion or opinion* expressed by Wade, unsupported by the facts and the provisions of the policy, and to which not even an expert is permitted to testify. "An expert may aid the jury, but he can not perform the functions of a juror, and under the guise of giving testimony, state a legal conclusion." *Hartford Accident &c. Co. v. Camp,* 69 Ga. App. 758, 762 (26 SE2d 679), and see *Connor v. Hodges,* 7 Ga. App. 153 (7) (66 SE 546); *Central Railroad v. DeBray,* 71 Ga. 406, 420 (3); *Travelers Ins. Co. v. Thornton,* 119 Ga. 455 (1) (46 SE 678). As Judge Sibley pointed out in Hamilton v. U.S., 73 F2d 357, 358, the witness, (a doctor) though he be an expert, "knows no more about the . . . question, so far as it is not one of law, than any other man—than the jurors themselves." It was not suggested or contended that Wade was an expert here. His statement as to the legal effect of the insurance contract could fall under no less stringent rule. As the request related to this evidence it had no application and denial of it was proper.

The request to charge "must be entirely correct and accurate; it must be adjusted to the pleadings, the law and the evidence in the case." *New York Life Ins. Co. v. Thompson,* 50 Ga. App. 413 (1) (178 SE 389). "A request for instruction to the jury must be correct as a whole. It should be perfect in itself, or the court should refuse it." *Bridges v. Donalson,* 165 Ga. 228, 233

(140 SE 497). "Unless a request to charge is all legal and pertinent, the court is not bound to give any part of it." *Gardner v. Granniss,* 57 Ga. 539 (15).

Another sufficient reason for refusing the request is that in it the witness is described as being the mother of "the child about whom this suit has been brought" when the suit was not about the child at all, but about benefits alleged to be due under an insurance policy. "A request to charge the jury must be correct and even perfect; otherwise refusal to give it is not error." *Lewis v. State,* 196 Ga. 755 (3) (27 SE2d 659). Thus, it was held not error to refuse to give a request which referred to the highway as being slippery from *falling rain* when the pleadings and the evidence showed it to have been *ice, King v. Ellis,* 104 Ga. App. 335, 336 (121 SE2d 815), and that even a typographical error in the spelling of the word "invitee" so that it read "indictee" rendered the request imperfect and improper. *Downs v. Powell,* 215 Ga. 62 (4) (108 SE2d 715). Though a request may not be so erroneous as to require a reversal if given, if it is infected with any inaccuracy the court may properly refuse to give it. *Southern R. System v. Yancey,* 102 Ga. App. 159 (5) (115 SE2d 693).

*Judgment affirmed. Felton, C. J., and Russell, J., concur.*