### 49363. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v. BISHOP et al.

DEEN, Judge.

Michael L. Bishop, an employee of the Carolina Cartage Company, became insured by Mutual Life Insurance Company of New York under a group hospitalization insurance policy, *effective June 24, 1972.* The policy covered members of his family as well as himself. His wife was hospitalized from June 26 to July 3, 1972 for the removal of an ovarian cyst. The hospital bill was submitted to the insurance company for payment, but it declined to pay on the ground that coverage for these charges was specifically excluded under a policy provision excluding coverage for charges for "sickness, disease, or bodily injury which required medical care or treatment during the three months immediately preceding the effective date of [Mr. Bishop's] insurance."

The hospital brought suit against Mr. Bishop to recover its charges and he impleaded the insurance company as a third party defendant. The case came on for trial and the parties stipulated that the hospital was entitled to judgment in the amount sought against Mr. Bishop. The third party claim of Bishop against the insurance company was then tried by a jury. At the close of all of the evidence each party moved for a directed verdict. The motion of the insurance company was denied and that of Mr. Bishop was granted, and the jury, by direction, returned a verdict against the company for the amount of the hospital charges, with interest. Appellant then moved for a judgment n.o.v., under Code Ann. § 81A-150 (b), and that motion was denied. *Held:*

1. The burden of demonstrating that a fact situation comes within the exclusionary clause of an insurance policy is on the insurer. *Independent Life &c. Ins. Co. v. Thornton,* 102 Ga. App. 285, 290 (115 SE2d 835); *Ga. Farm Bureau &c. Co. v. Coleman,* 121 Ga. App. 510, 512 (174 SE2d 351); *Atlas Assur. Co. v. Lies,* 70 Ga. App. 162 (27 SE2d 791); *Burke v. Life Ins. Co. of Ga.,* 104 Ga. App. 865, 869 (123 SE2d 426). Where, under Georgia law, construction of the policy is necessary, "exclusions from coverage are construed against the insurer and in favor of providing the indemnity sought." Dorsey v. State Mutual Life Assur. Co. of Worcester, Mass., 238 FSupp. 391.

2. The employee's group hospitalization insurance policy under which the plaintiff's wife was covered by its terms excludes "a sickness, disease or bodily injury which required medical care or treatment during three months immediately preceding the effective date of the individual's insurance" but specifically does not exclude "a three-month period ending while the individual is insured . . . and during which he incurred no medical care or treatment expenses in connection with" the infirmity. Bishop's employment commenced on May 1, 1972; the insurance premium was withheld from his wages and the policy, when it arrived, carried a commencement date of June 24. Coverage was denied under this exclusion for the stated reason that "Mrs. Bishop was first treated for this condition on June 6, 1972. Since coverage was not

effective until June 24, 1972, no benefits are payable."

The uncontradicted evidence is that Mrs. Bishop consulted her family physician in September, 1971, at the time of her marriage; he found her in good health except for a weight problem, and put her on a diet and ovulation pills. She went back for a checkup on June 6; at that time the physician suspected that her stomach enlargement was due to one of two pathological causes and told her to come in for testing on June 20. She underwent various tests on this date as a result of which a decision to operate was made; on June 26 she was hospitalized and a 22-pound ovarian tumor subsequently removed. This latter date was two days after the policy became effective.

Did the examination on June 6 and the tests administered on June 20 constitute "medical care and treatment" within three months of the inception date so as to exclude coverage? These words generally refer to something done in the application of the curative arts, whether by drugs or other therapy, with the end in view of alleviating a pathological condition. Thus, surgery, in its extended sense, may constitute "care and treatment" when a mere examination or evaluation does not. It was held in Fisher v. Rhoades Construction Co., 190 Kan. 448 (1) (375 P2d 771) that an employee in a workmen's compensation case who went to a physician for purposes of examination and evaluation, the doctor subsequently testifying in the employee's behalf, did not receive "medical treatment and care" from the examination, the evaluation, or the testimony. Where the purpose of the two preoperative visits was for diagnostic and evaluation purposes only, with no treatment involved, we hold that they alone were insufficient to bring the expenses of otherwise insured operation within the exclusionary clause.

3. The parties agreed to the allowance of, and the insurer introduced in evidence, a statement of the physician which reads in part: "Mrs. Bishop came to our office on June 6, 1972, for a routine examination and not because of any complaint referable to sickness, disease, or bodily injury. She was not seen on June 20, 1972, for any medical care or treatment for any sickness, disease, or bodily injury. The latter was an evaluation of

incidental findings. Technically, her treatment began with her surgery on June 28, 1972. It should be understood that the visit on June 20, 1972, was for preoperative evaluation for the surgical treatment on June 28, 1972. Having seen her in this office on January 4, 1972, for routine visit for a prescription of Ovulen, and having no evidence of disease at that time, I have no reason to feel that this patient was aware, in any way, of any problem in her health at the time of her visit to me in June, 1972."

This statement agrees with the testimony of Mrs. Bishop. It factually iterates the reason why the physician set up the appointment and the procedures which he followed. It is not a mere conclusion to be disregarded, for only the doctor has complete knowledge of what he did or his reasons for doing it. The insurer offered the statement and no evidence was produced to contradict it. Accordingly, the direction of the verdict in favor of the third-party plaintiff is without error.

*Judgment affirmed. Bell, C. J., Quillian, Evans and Webb, JJ., concur. Eberhardt, P. J., Pannell, P. J., Clark and Stolz, JJ., dissent.*

ARGUED MAY 8, 1974 — DECIDED SEPTEMBER 16, 1974· — REHEARING DENIED OCTOBER 8, 1974 — 

*Troutman, Sanders, Lockerman & Ashmore, Allen E. Lockerman, Jeffrey R. Nickerson,* for appellant.
*Scott Walters, Jr.,* for appellees.

EBERHARDT, Presiding Judge, dissenting.

Dr. Wilson, the attending physician, asserted by letter that he examined Mrs. Bishop on June 6, 1972, found her abdomen to be disproportionately extended as compared to her extremities. *"I questioned her about this. I am satisfied that this patient was unaware that there was a problem in her abdomen at the time of her examination, and her only observation had been on questioning that she did not seem to lose weight in her abdomen as quickly as elsewhere. At the time of that examination, abdominal pelvic examination revealed*

*fluid in the abdomen.* The differential diagnosis of acites versus ovarian cyst was made. Subsequent evaluation with SMA-12, CBC, Urine and Liver Package indicated that this was indeed most likely an ovarian cyst, and *she was advised to have surgical removal.* She was scheduled for *preoperative examination on June 20, 1972, at which time a complete examination was carried out in preparation for surgery.* She underwent surgical removal of the ovarian cyst on June 28, 1972.

"In summary, in regard to the more specific questions that you have raised, Mrs. Bishop came to our office on June 6, 1972 for a routine examination, and not because of any complaint referable to sickness, disease or bodily injury. She was not seen on June 20, 1972 for any medical care or treatment for any sickness, disease or bodily injury. The latter was an evaluation of incidental findings. Technically, her treatment began with her surgery on June 28, 1972. It should be understood that her visit on June 20 was for preoperative evaluation for the surgical treatment on June 28, 1972.

"Having seen her in this office on January 4, 1972, for a routine visit for a prescription of Ovulen, and having no evidence of disease at that time, I have no reason to feel that this patient was aware, in any way, of any problem in her health at the time of her visit to me in June, 1972."

The questions raised by enumerated error 1 are whether a doctor may, in effect, interpret the language of an insurance policy providing an exclusion from coverage; whether the language of the exclusion is phrased in technical words, or words of art, what the word "required" in the exclusion means, whether the language of the exclusion is purely for interpretation by the courts, and whether introduction of the doctor's letter by the defendant works an estoppel against it to contend that the contact which Dr. Wilson had with Mrs. Bishop June 6, June 20 and June 24 was "medical care and treatment" contrary to the doctor's assertions.

1. If the doctor is, in effect, giving a legal opinion in the letter for use in interpreting the contract, it goes beyond permissible limits of testimony and should not be considered. See *Plaza Hotel Co. v. Fine Products Co.,* 87

Ga. App. 460, 462 (74 SE2d 372). Construction of all contracts, even an ambiguous one, is for the court, and this applies to insurance contracts as well as to others. *Davis v. United American Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488). If there is no ambiguity the contract needs no construction and it is the duty of the court to apply the contract as written. *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 302 (99 SE2d 95). Indeed, it is error in such cases to submit the meaning of the contract to a jury. *Mergenthaler Linotype Co. v. Glover Printing &c. Co.,* 58 Ga. App. 634 (199 SE 756); *Empire Mills Co. v. Burrell Engineering &c. Co.,* 18 Ga. App. 253 (1) (89 SE 530), and it would be equally error to admit testimony of a witness, expert or otherwise, whether by letter or otherwise, for the purpose of construing the contract unless it contains some technical words or phrases or words of art which have a special and peculiar meaning to a trade or profession. *Hill v. John P. King Mfg. Co.,* 79 Ga. 105 (2) (3 SE 445). If there is ambiguity in the contract and the party who wrote it attempts to explain it and to take the benefit of a favorable construction for himself, he has the burden of clearing the meaning beyond doubt, and failing in doing so, must suffer a construction against him. *Hill v. John P. King Mfg. Co.,* 79 Ga. 105 (4), supra.

2. Is there ambiguity in this contract? The crucial provision, upon which this case must be determined, is an exclusion in the policy providing that the insurer shall not be liable to pay hospital or medical charges for "a *sickness, disease,* or bodily injury *which required medical care or treatment during the three months immediately preceding* the effective date of [Mr. Bishop's] insurance." The portion italicized raises the problem, if there is one. What is the meaning of "required" in this context? And what is "medical care or treatment?" What is the meaning of "sickness [or] disease?" Are these words of ordinary and common usage found in the contract, which need no construction and are to be given their ordinary meaning, or are they technical words or words of art? We doubt that there is ambiguity, but if so, we find no difficulty in arriving at its meaning.

First, let us deal with the phrase "sickness [or]

disease." The nearest construction by courts of this state appears in *Commercial Cas. Ins. Co. v. Jeffers,* 69 Ga. App. 52 (24 SE2d 815) where this court dealt with a policy the application for which became a part of the contract and in which the question was asked as to whether the applicant had experienced any accident or illness and had received "medical or surgical attention [therefor] during the last five years," and the applicant answered "No." It appeared that in fact he had suffered a spider bite on the scrotum and had been operated on for an abscess which developed therefrom and drainage and dressing had been applied.

This court declared that "Illness, in insurance law, is 'a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine or weaken the constitution of the insured,' " and further that the meaning, in insurance law, of "medical or surgical attention," as used in the question in the application in controversy, is, "had the plaintiff, before signing of the application, received medical or surgical attention for an illness or an accident of such a character as to affect the general soundness and healthfulness of the system seriously? It does not mean a mere temporary indisposition which does not tend to undermine or weaken the constitution of the insured . . ."

We note two things in connection with that case. First, the construction was done by the court — not by a doctor, and thus the court did not deem the words to be technical or words of art. Secondly, the exposition of the court affords some light as to the nature of the illness or disease which the contract refers to; it is something of a serious nature and not a mere indisposition which is temporary in nature. There can be no question but that Mrs. Bishop's was not a mere temporary indisposition and that it was serious in nature; a cyst or tumor tends to be malignant in character, and is not a trivial matter — certainly not one of this magnitude. *Preston v. Nat. Life & Acc. Ins. Co.,* 196 Ga. 217, 235 (26 SE2d 439).

The phrase "medical or surgical attention" in the same context drew the same construction in *Federal Life*

*Ins. Co. v. Summergill,* 45 Ga. App. 829 (166 SE 54); *Equitable Life Assur. Society v. Minter,* 57 Ga. App. 65, 69 (194 SE 229); *Southern Life Ins. Co. v. White,* 60 Ga. App. 414, 420 (3 SE2d 849); however, these were disapproved by the Supreme Court, insofar as applying them to representations in the application for insurance, in *Preston v. Nat. Life & Acc. Ins. Co.,* 196 Ga. 217, 234, supra. No misrepresentation is here involved, for the phrase appears in an exclusion in the policy — not in a question in an application to be answered by the applicant.

In Barkerding v. Aetna Life Ins. Co., 82 F2d 358 (5th Cir.) the late Judge Samuel H. Sibley, wrote for the court, dealing with a case from Louisiana and involving an exclusion in an accident policy for an injury "which is the direct or indirect result of medical treatment." Plaintiff suffered a serious burn from heat applied at the instance of a chiropodist in treating a calloused foot, as a result of which he had an amputation of his toe and then his foot. Judge Sibley asserted that "In construing the policy, we pay but little mind to the statutes of Louisiana regulating and defining the practice of medicine and chiropody. The policy makes no reference to these statutes, and its words are to be given their ordinary meaning in common speech. *Medical and surgical treatment mean what is done by a physician of any recognized type or by a surgeon in diagnosing a bodily ailment and seeking to alleviate or cure it."* (Emphasis supplied.)

No reference is made in the policy here to the statutes of Georgia regulating the practice of medicine or surgery. The facts disclose that Mrs. Bishop, at the urging of her husband and of her mother, sought out the advice and help of Dr. Wilson in determining or diagnosing what the trouble might be in her abdomen, and in the interest of her health to treat it. The Barkerding case has been cited and followed in other jurisdictions, all holding, as did the court in that case, that the words "medical or surgical attention," or "medical or surgical treatment," *are not technical words and are to be construed by the court in relation to the insurance law* and "to be given their ordinary meaning in common speech," or "not being of a peculiar or technical nature, shall be taken in

their plain or ordinary and usual sense." Bryant v. Montgomery Ward & Co., (Mo. App.) 416 SW2d 195. "[T]he ordinary and legal meaning of the words employed [in an insurance contract] must be taken into consideration." *North British & Mercantile Ins. Co. v. Tye,* 1 Ga. App. 380 (1) (58 SE 110).

"The meaning of the word 'treatment' as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a nonsurgical case, but also the *preliminary examination* . . . The treatment may, and generally does, include three stages: Preliminary, main and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term 'treatment,' even though it may not be an indispensable prerequisite." (Emphasis supplied.) Order of United Commercial Travelers v. Shane, 64 F2d 55, 59 (8th Cir.), citing with approval International Travelers Assn. v. Yates, (Tex. App.) 29 SW2d 980, and Flint v. Travelers Ins. Co., (Tex. Civ. App.) 43 SW 1079, to like effect.

"Within such legal meaning [of the term 'medical and surgical treatment'] must be included not only what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity, but also all of the things performed by a doctor or surgeon on the body of the patient *in the diagnosis of or in preparation for cure.*" (Emphasis supplied). Provident Life & Accident Ins. Co. v. Hutson, (Tex.Civ.App.) 305 SW2d 837, 840 (65 ALR2d 1443), cited approvingly in Dinkowitz v. Prudential Ins. Co. of America, 90 N. J. Super. 181 (216 A2d 613). See also Hester v. Ford, 221 Ala. 592 (130 S 203).

What is the meaning of "require" as used in this exclusionary provision of the policy? We have found no case from the appellate courts of this state, and none has been cited to us, construing the word in this context. In other jurisdictions it has been held *not to mean necessary or indispensable, but rather that which is appropriate.* Harrison v. Curtiss-Wright Corp., 134 N.J.L. 563 (49 A2d 496). It imports that which is sufficient to prompt one

suffering from the disease, malady or infirmity to seek medical aid or treatment. Black v. DeVries, 133 N. J. L. 368 (44 A2d 386). It suggests that which prompts the sufferer to want or to call for medical aid or treatment. It imports a condition which indicates to the sufferer that he has need or occasion for medical attention. Miller v. Mutual Benefit Health &c. Assn. (Mo. App.) 80 SW2d 201. It is that which indicates that medical attention is appropriate or needed if he is to have relief from his disease or infirmity. Electronic Detection Products, Inc. v. Chapin, 26 FRD 121; Value Line Fund, Inc. v. Marcus, 161 FSupp. 533.

In McKay v. Bankers Life Co., (Iowa) 187 NW2d 736, the court dealt with an exclusion which raises the same issue as here, and the insured's attending physician testified that medical or surgical treatment did not include efforts to diagnose the disease. The Supreme Court of Iowa asserts that "The trial court recognized that 'the great weight of authority is that "surgical treatment" includes a surgical procedure designed for diagnostic purposes,' and cited many . . . cases . . . He believed however that a fact question was created because Dr. DeKraay made a medical distinction between diagnosis and treatment. . . We do not believe that a doctor's technical distinction between 'diagnosis' and 'treatment' is sufficient to make a factual issue as to the meaning of the policy," and "we therefore hold as a matter of law 'medical and surgical treatment' as used in the exclusionary clause of the accidental death policy on the life of appellee's husband includes medical and surgical procedures performed for the purpose of aiding in the diagnosis of a particular disease."

We conclude that in ordinary parlance and common usage the word, as used here, means that if an insured was, at the time the insurance became effective, suffering from a disease or malady which called for medical aid or attention if he were to obtain relief or cure from it, and that condition existed at any time during the three months next preceding the effective date of the insurance, expenses which might be incurred in its treatment would not be covered.

3. The insurance became effective June 24, 1972,

and it appears that Mrs. Bishop did, in fact, receive medical care or treatment within the three-month period prior thereto for the very condition which subsequently brought on the operation for removal of the 22 pound cyst, from which condition she had suffered for some time. Dr. Wilson saw her June 6 and diagnosed her condition and advised that she should undergo surgery for removal of the cyst after a complete preoperative examination, preparatory to the surgery, on June 20, 1972. This is not disputed. Under the legal construction of the policy terms, it was medical care or treatment within the meaning of the exclusion, and neither the expenses for those procedures nor for the surgery which followed was within the coverage.

4. We apprehend that the defendant insurance company introduced the letter from Dr. Wilson for showing that Mrs. Bishop had, in fact, seen him and had been attended by him on the occasions of June 6 and 20 for the malady which precipitated the operation.

The doctor's conclusion that these were not a part of the medical care or treatment afforded Mrs. Bishop, in an apparent effort to construe the exclusionary clause of the policy, is like unto hearsay. He was not qualified to construe the policy or to give an opinion on that subject. A physician "can give his opinion on physical facts or as to the medical facts, but he can not determine the legal classification of such facts." *Travelers Ins. Co. v. Thornton,* 119 Ga. 455 (2) (46 SE 678). Construction of the contract is a matter for the court, and not even an expert may testify that the meaning of the language used is different from that which the courts have applied, or as to a construction which is contrary to that made by the courts. The defendant insurer is no more bound by the conclusion or opinion of the doctor as to the construction of the language of the contract here than is a company bound by statements by its agents or adjusters which have the effect of a legal conclusion as to the meaning or effect of a portion of the policy. In this connection see *Bankers' Health & Life Ins. Co. v. Givens,* 43 Ga. App. 43, 50 (4) (157 SE 906); *National Life & Accident Ins. Co. v. Parker,* 67 Ga. App. 1, 8 (19 SE2d 409); *Sherwin-Williams Co. v. St. Paul-Mercury Indem. Co.,* 97 Ga. App. 298, 299

(102 SE2d 919); *Fields v. Fire & Cas. Ins. Co.,* 101 Ga. App. 561, 562 (114 SE2d 540); *Wells v. Metropolitan Life Ins. Co.,* 107 Ga. App. 826, 834 (131 SE2d 634); *Bryant v. Motors Ins. Corp.,* 109 Ga. App. 47, 52 (3b) (134 SE2d 905); *Sasser v. Coastal States Life Ins. Co.,* 113 Ga. App. 17 (2d) (147 SE2d 5).

Further, "testimony which is merely a conclusion of a witness is without probative value," *Patterson v. Cotton States Mut. Ins. Co.,* 221 Ga. 878, 882 (148 SE2d 320), citing *Dougherty v. Dougherty,* 153 Ga. 487 (1) (112 SE 454); *Blanchard, Humber & Co. v. Hagan Gas Engine &c. Co.,* 26 Ga. App. 538, 539 (106 SE 604).

The judgment should be reversed.

I am authorized to state that Presiding Judge Pannell and Judges Clark and Stolz concur in this dissent.