**AMERICAN GUILD OF MUSICAL ARTISTS, an unincorporated association, Plaintiff,**

v.

**ATLANTA MUNICIPAL THEATER, INC., a corporation, and Christopher B. Manos, individually, Defendants.**

Civ. A. No. 12494.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 17, 1971.

Becker & London, New York City, Addair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiff.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendants.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

MOYE, District Judge.

I.

FINDINGS OF FACT

On or about August 10, 1968, the two contracts attached to Plaintiff's Complaint as Exhibits "A" and "B" were entered into between American Guild of Musical Artists (AGMA), Plaintiff in this action, and Atlanta Municipal Thea-

ter, Inc. (AMT), a non-profit corporation, one of the Defendants herein. AGMA was the bargaining agent for certain performing artists who were employed or were to become employed by AMT. The other Defendant herein, Christopher B. Manos, was the Vice President-General Manager of AMT, and executed the two contracts on behalf of AMT. The contracts were the result of several months negotiations carried on for AMT by Michael Parver, the Production Manager, and for AGMA by Joan Greenspan. The contracts were for the purpose of providing the terms and conditions of employment of various performing artists with AMT in its production of "King Arthur" in connection with the opening of the Atlanta Memorial Arts Center.

Defendant Manos was not personally involved in any of the negotiations between Parver for AMT and Greenspan for AGMA after an initial meeting between Greenspan and one Hy Faine on behalf of AGMA and Parver and Manos on behalf of AMT in New York City at the start of the negotiations.

The contracts were prepared by AGMA, and were received on behalf of AMT by Parver in Atlanta, Georgia, in the mail from AGMA. The contracts were received in Atlanta on or about August 10, 1968. Both contracts are printed or typed, are of plaintiff's "standard" form, and have provisions covering many different aspects of the relationships of the performing artists to AMT. Contract A consists of 20 pages and 51 paragraphs. Contract B has 18 pages and 45 paragraphs. Contract A has 5 blanks on page one, 1 in paragraph 15, 2 in paragraph 45, and 2 in paragraph 46; and one handwritten date correction on paragraph 45. Contract B has 5 blanks on page one (one consisting of 3 lines), 1 in paragraph 18(c), 2 in paragraph 40, and 2 in paragraph 41. When the contracts were received by Parver on behalf of AMT, the handwriting had been inserted by AGMA in all the blanks that have writing in them in the manner appearing in

the contracts as attached to the Complaint. All the blanks were completed in Contract A with the exception of that in the first sentence of paragraph 46. All the blanks were completed in Contract B with the exception of that in the first sentence of paragraph 41, and that provided for the address of AMT on the first page.

Parver examined the contracts and later obtained two amendments to them. The two contracts were reviewed by Parver alone, and by Parver and Manos together. The contracts and the amendments are clearly the undertaking of AGMA and AMT, with Manos signing as agent in his representative capacity for AMT.

Paragraph 46 of Contract A appears as follows:

"46. PERSONAL LIABILITY

It is understood and agreed that ———————— ————————, who is signing this Agreement on behalf of the Employer as an agent and representative of the Employer, is also signing this Agreement in his capacity as an individual in addition to his capacity as an agent and representative of the Employer, and his signature to this Agreement shall bind him, individually and personally, as well as the Employer. Christopher B. Manos hereby warrants and represents that he has the requisite authority as an agent and representative of the Employer to sign this agreement on behalf of, and to bind, the Employer."

Paragraph 41 of Contract B appears as follows:

"41. OBLIGATIONS OF SIGNATORIES

It is understood and agreed that ———————— ———————— who is signing this agreement on behalf of the EMPLOYER as an agent and representative of the EMPLOYER, is also signing this agreement in his capacity as an individual in addition to his capacity as an agent and representative of the EMPLOYER, and his signature

to this agreement shall bind him, individually and personally as well as the EMPLOYER. Christopher B. Manos hereby warrants and represents that he has the requisite authority as an agent and representative of the EMPLOYER to sign this agreement on behalf of, and to bind, the EMPLOYER."

As stated above, and as shown by the two paragraphs as quoted, the blanks in the first sentence of each paragraph were not filled in when the contracts were received by Parver, and were left blank intentionally by Parver and Manos.

At no time in any of the negotiations between Parver and Greenspan was any mention made of personal liability with respect to Manos. Manos had no discussions with anyone on behalf of AGMA at any time in regard to any prospective personal liability on his part. Manos and Parver were aware of paragraphs 46 and 41 as above quoted, but it was their opinion that since Manos' name had not been filled in the appropriate place, the provision did not apply, and Manos would not obligate himself personally by executing the contracts. Manos testified he would not have signed the contracts had he thought he was personally obligating himself. The testimony of Manos and Parver is clear that both were of the opinion that execution of the contracts by Manos with the blanks in the first sentences of paragraphs 46 and 41 would not result in obligating Manos personally. They did not consult a lawyer. Thus it is clear that Manos did not intend to bind himself personally.

No evidence was submitted on behalf of plaintiff as to its intention, the plaintiff relying solely on the written language of the contract.

Sometime after the date of the two contracts, AMT failed and was unable to pay certain obligations to performing artists covered by the two contracts. AGMA brought suit against AMT and against Manos personally. AMT defaulted, and judgment has been entered against it. Both AGMA and Manos filed Motions for Summary Judgment. This Court entered an Order on February 12, 1970, 310 F.Supp. 944, denying both Motions and stating in pertinent part:

"As to the motions for summary judgment it appears that both must be denied because there is a factual issue as to whether Defendant Manos, who signed the contract between plaintiff and Atlanta Municipal Theater, Inc., signed only as the latter's agent or whether he bound himself individually. The parties agree that when an individual signs a contract as agent for a disclosed principal the individual is not bound personally unless there is something in the body or on the face of the instrument to indicate otherwise. It is undisputed that the basic contracts in the instant case contain printed clauses which, if completed, would bind the agent personally, but the lines provided in those clauses for insertion of the agent's name are blank.[2] [footnote text omitted] Plaintiff contends that merely having the clause in the contract *form* is sufficient, while Defendant Manos contends that the fact that the agent's name was not written into the clauses clearly indicates that the clauses were not intended to be a part of the contracts entered into by the parties to this suit. These contentions create a factual issue as to whether the signatories to the contracts intended the printed clauses to be a part of the contracts in question and the motions for summary judgment therefore must be denied."

The Pre-Trial Order controlling this case limited the sole issue for determination by the Court at trial to that of "whether or not the signature of Defendant Manos to the contracts designated as Exhibits 'A' and 'B' to the original complaint under all the circumstances bound him personally" [Pre-Trial Order, p. 2].

The case was tried in this posture before this Court sitting without a jury. No witnesses appeared on behalf of AGMA. Manos and Parver appeared for Manos.

## II.

### CONCLUSIONS OF LAW

1. This is a diversity of citizenship case, of which the Court has jurisdiction, both of the persons involved and of the subject matter.

2. It is clear that Manos signed the contracts as agent for his disclosed principal, AMT

3. As indicated in the Order on Motion for Summary Judgment, where an individual signs a contract as agent for a disclosed principal, the individual is not bound personally unless more appears. The only things that could bind Manos personally in the two contracts in this case are the first sentences in paragraphs 46 and 41. Since the blanks in these sentences were not completed while all the other pertinent blanks were, the question is raised as to whether Manos and AGMA intended to include the personal undertaking of Manos in the contracts. The Court concludes that they did not for the reasons set forth below:

(a) The contracts were prepared in their entirety by AGMA, and all blanks which were to be filled in were filled in by AGMA. The said contracts were ambiguous with respect to the personal obligation of Manos, and therefore must be construed most strongly against the person preparing the instrument, the plaintiff. Hill v. John P. King Manufacturing Company, 79 Ga. 105, 3 S.E. 445; Moorefield et al. v. Fidelity Mutual Life Insurance Company, 135 Ga. 186, 69 S.E. 119; W. C. Shepherd Co. v. Royal Indemnity Co., 192 F.2d 710, 714 (5th Cir. 1961).

(b) No witnesses appeared on behalf of AGMA, though the signatory on the contract, Joan Greenspan, had participated in negotiations leading up to the two contracts.

(c) The blanks in the contracts were filled in by AGMA. The blanks applicable to Manos' personal undertaking were left empty in both contracts. These circumstances raise an implication that the blanks were intentionally not filled in by AGMA. Even a contention of oversight on the part of AGMA would be weak since the blanks were empty in both contracts, not just one of them, and since the second blanks which are immediately below the first blanks, were completed. Plaintiff offered no evidence as to why these blanks were not filled in.

(d) The sentences relating to Manos' personal liability in both contracts, with the vacant blanks, immediately precede in the same paragraphs sentences in which Manos' name was filled in, which sentences are his warranties that he was agent for and had authority to sign for AMT. These completed blanks are five lines below the empty blanks. A contention that AGMA could not fill in the first blanks in these paragraphs because AGMA might not have known who would be signing for AMT cannot stand. AGMA obviously knew Manos was to sign, since AGMA was able to insert Manos' name in the second space, in the sentences warranting his authority to sign as agent for AMT.

(e) At no time in the negotiations was there any discussion between Manos or anyone for AMT and anyone for AGMA with respect to Manos' prospective personal obligation on the two contracts. It is permissible to consider the content of negotiations to construe an ambiguity in a contract. Lea v. C & S National Bank, 27 F.2d 385 (N.D.Ga. 1928). It would appear, therefore, that no intention was ever expressed or formulated by either party that Manos would be personally bound. It would seem unusual for a matter of such seriousness as the personal undertaking by an individual on these complex contracts, an undertaking which could result in very large liability on the part of the individual, not to have been specifically raised by the party seeking the protection and discussed at length between the

parties, had there been any intention that such a result would obtain, particularly where negotiations on the contracts lasted for some time.

(f) The only oral testimony at trial as to the intent of the parties was that of Manos and Parver. The testimony of both was that no intention had been formed or indicated by Manos, AMT, or by AGMA that Manos would be personally bound.

## CONCLUSION

Defendant Manos was not personally bound to plaintiff on the contracts in question, and therefore is not liable to plaintiff in this action.

Let judgment issue in favor of the defendant Manos and against plaintiff (default judgment in favor of plaintiff against defendant Atlanta Municipal Theater, Inc., having already issued).